16480

STATE v. RILEY

(64 S. E. (2d) 127)

*Messrs. L. A. Hutson, Jr.,* of Greenville, and *L. A. Hutson,* of Orangeburg, *for Appellant,*

*Messrs. Julian S. Wolfe, Solicitor,* and *T. B. Bryant, Jr.,* of Orangeburg, *for Respondent,*

March 20, 1951.

TAYLOR, Justice.

The appellant was convicted of the crime of manslaughter at the May, 1950, term of Court of General Sessions for

Orangeburg County and was sentenced by the Presiding Judge to serve four years.

At the conclusion of the State's testimony, appellant moved for a directed verdict of "Not Guilty", and after the verdict by the jury moved for a new trial upon the same grounds as those upon which his motion for a directed verdict was made, both motions being refused. He now appeals to this Court upon exceptions which present the questions:

1. Did the Presiding Judge err in overruling appellant's motion for a directed verdict or his motion for a new trial?

2. Did the Presiding Judge err in charging: "The jury has such a right and they may find such a special verdict recommending to the mercy of the Court for any reason or for no reason at all"?

When considering a motion for a directed verdict in favor of a defendant, it is not the function of the Court to pass upon the weight of the evidence, but to determine its sufficiency to support the verdict. Where there is any evidence, however slight, on which the jury may justifiably find the existence or nonexistence of material facts in issue, or if the evidence is of such character that different conclusions as to such facts reasonably may be drawn therefrom, the issue should be submitted to the jury. *State v. Prince,* 165 S. C. 115, 162 S. E. 777; *State v. Gellis,* 158 S. C. 471, 155 S. E. 849; *State v. Rush,* 129 S. C. 43, 123 S. E. 765.

The general rule is that, if there be any evidence tending to prove the fact in issue or which reasonably conduces to its conclusion as a farily logical and legitimate deduction and not merely such as raises a suspicion or conjecture in regard to it, the case should be submitted to the jury. *State v. Roddey,* 126 S. C. 499, 120 S. E. 359; *State v. Villepigue,* 127 S. C. 392, 121 S. E. 258; *State v. Walker,* 138 S. C. 293, 136 S. E. 215.

The evidence adduced by the State showed that David Griffin, deceased, along with his wife, Maggie Griffin, on the night of December 24th, 1949, visited a place in Orangeburg County called the White Tower, which is an eating place for colored people near the city limits of Orangeburg, and, while sitting at a table therein, were joined by one, Walter Williams. It then appears that the appellant, Milton Riley, Jr., began a conversation with Walter Williams which resulted in the appellant's being struck by the said Williams. The deceased intervened and separated the two, after which he rejoined his wife at the table. One, Pearl Whitmore, the owner of the place, ordered appellant, by reason of his conduct, to leave the place of business and escorted him to the door, but appellant returned shortly afterwards and again became involved in further argument with Williams. Turning to leave the place, appellant invited Williams to join him on the outside. Williams then removed his coat and started to comply, but, as he neared the door, a shot was heard from the outside and deceased stated that he had been shot. One witness stated that he saw appellant arrive but did not hear any argument and did not see Griffin, the deceased, with a knife, gun or weapon of any sort. Witness Walter Williams, who had been involved in the difficulty with the appellant, stated positively that the deceased did not provoke the trouble and had no weapons, but on the other hand had tried to act as peacemaker. Several witnesses testified that when deceased was shot, he was advancing upon appellant with a knife. Appellant himself testified that Griffin was advancing upon him with a beer bottle and a knife, although no knife was produced at the trial, and this was the first time a beer bottle had been mentioned by any of the witnesses. From the foregoing, it is evident that the testimony was sufficient to require the Trial Judge submitting the case to the jury for its determination of the facts as there was more than a suspicion or conjecture as to the guilt or innocence of appellant.

Under this exception appellant also takes the position that his motions should have been granted because the State did not prove that David Griffin died as a result of a wound inflicted by appellant, but rather from typhoid fever.

A portion of the medical testimony appears as follows:

"Q. We would like to know if this typhoid fever was the sole cause of his death? A. No, sir. I will put it this way: The cause of death was typhoid fever, the contributory cause of death was the bullet wound, that was secondary to the pneumonia. This man also developed uremia as a result of the shock. The cause of death was typhoid fever and the contributory cause of death was the bullet wound and the pneumonia.

"Q. When this man arrived at the hospital did he look to be in normal health? A. He was in shock from the bullet wound. Shock is a suppression of the bodily functions.

"Q. As a matter of fact did the typhoid fever lessen his chances of recovery? A. Yes, sir; I would say that the chances for this man's recovery were very good. Had it not been for the typhoid fever his chances for recovery were, in my opinion, very good, but I could not state whether or not he would have lived if he had not had the typhoid fever, but I say that the cause of his death was typhoid fever and the contributory cause was the bullet wound, with this secondary complication, which I referred to as pneumonia and uremia."

Dr. James Wells testified:

"Q. Did you see this man David Griffin? A. Yes, sir.

"Q. You heard the testimony of Dr. Wolfe. Have you anything to add to his testimony, after your treatment of this man? A. No, sir; except that I think he had some heart trouble when I saw him. Probably due to the secretion of the urine and other things.

"Q. Typhoid fever killed this man with the contributing causes that Dr. Wolfe told us about? A. Yes, sir.

"Q. Typhoid fever was not related to the wound? A. No, sir. The only connection between the typhoid and the injury was the contusion.'

"Q. This germ developed to the extent that it was about to develop into typhoid fever and that would cause a weakening of the body? A. Yes, sir. It was weakening when he started developing the symptoms.

"Q. If you had found that earlier and had secured this drug that you speak of, if you had secured that and treated this man with it, he may have been alive today? A. I can't answer that.

"Q. Don't patients recover from such wounds as this man had day after day? A. Lots of patients with serious punctures do recover.

"Q. A lot of them do recover when it has not devoloped to the extent that the doctor knows whether or not the typhoid germ is present and whether or not give this particular medicine that you talk of? A. This germ was not isolated until after death.

"Q. You don't know that the fever was brought about from the injury; you did not think to make the test for the typhoid? A. Those tests were made after he died. They take the blood culture but they can't tell you right then. It takes several days. That is why it was not isolated until after his death.

"Q. There is no question but that he died from typhoid fever? A. No, sir.

"Q. No question about the fact that if he had had that medicine he would not have died? A. I can't answer that.

"Q. In your opinion did this bullet and its infliction contribute to this man's death? A. By weakening his condition; the general condition of the patient contributes to that."

This question was recently passed upon by this Court ██ in the case of *State v. Doe,* S. C., 63 S. E. (2d) 303, which cites the cases of *State v. Foote,* 58 S.C. 218, 36 S. E. 551; *State v. Chiles,* 44 S. C. 338, 22 S. E. 339; *State v. Francis,* 152 S. C. 17, 149 S. E. 348, 70

A. L. R. 1133; *State v. Luster*, 178 S. C. 199, 182 S. E. 427, as authority among other things for the proposition that one who inflicts an injury on another is deemed by law to be guilty of homicide where the injury contributes mediately or immediately to the death of the other. The fact that other causes also contribute to the death does not relieve the actor from responsibility.

The exceptions which pose the question of whether or not it was error for the Trial Judge to refuse appellant's motions for directed verdict of "Not Guilty" and for a new trial are dismissed.

The last question, as stated by appellant, in this appeal is whether or not the Presiding Judge committed error in charging: "The jury has such a right and they may find such a special verdict recommending to the mercy of the Court for any reason or for no reason at all."

A charge will be considered in its entirety in determining whether or not any particular portion thereof was erroneous. *State v. Wilson*, 115 S. C. 248, 249, 105 S. E. 341; *State v. Burnett*, 210 S. C. 348, 42 S. E. (2d) 710.

The entire paragraph from which the portion complained of was taken appears as follows: "That is the definition of murder and the law fixes the punishment for that at death by electrocution, provided, however, that in each case where a person is found guilty of the charge of murder the jury may find a special verdict recommending him to the mercy of the Court, and then the punishment shall be reduced to life imprisonment in the penitentiary at hard labor. The jury has such a right and they may find such special verdict recommending to the mercy of the Court for any reason or for no reason at all."

When taken as a whole, we see no error in the charge. We are of the opinion that all exceptions should be dismissed, and it is so ordered.

FISHBURNE, STUKES, and OXNER, JJ., and L. D. LIDE, A. A. J., concur.