658 S.E.2d 337

**STATE of South Carolina, Respondent,**

v.

**Stanley DANTONIO, Jr., Appellant.**

**No. 4333.**

Court of Appeals of South Carolina.

Heard Jan. 9, 2008.

Decided Jan. 16, 2008.

Rehearing Denied March 25, 2008.

596

Wesley Locklair of Murrells Inlet, for Appellant.

Attorney General Henry D. McMaster, Chief Deputy Attorney General John W. McIntosh, Special Assistant Attorney Salley W. Elliott, Special Assistant Attorney General Amie L. Clifford, of Columbia; and Solicitor J. Gregory Hembree, of Conway, for Respondent.

ANDERSON, J.:

Stanley Dantonio appeals his conviction on two counts of felony driving under the influence. He argues the trial court erred in failing to direct a verdict in his favor and in instructing the jury on proximate cause. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

Dantonio was involved in a three-car collision on December 30, 2004 resulting in two fatalities. The accident occurred

between 9:30 and 9:45 p.m. on Highway 17 by-pass near Murrells Inlet. The Jeep Dantonio was driving struck a Honda driven by Katinka Mandoza as she turned into the right lane of Highway 17 by-pass. After hitting Mandoza, Dantonio's Jeep crossed the median and collided with an oncoming vehicle. The driver of the oncoming car, Elise Anne Anderson, and her passenger, Derrick Michael Labar, were killed.

Dantonio had been drinking with friends at the Dead Dog Saloon since about 4:00 p.m. on the afternoon of the accident. At approximately 9:35 p.m., Dantonio paid the bar tab for his party of four. Thirty-seven beers were charged to Dantonio's bill. Bartender Diane Tracy testified she was concerned about Dantonio's ability to drive, but felt reassured when she learned his wife had the keys to the Jeep in her possession. Nevertheless, Dantonio was driving at the time of the accident. A blood sample drawn from Dantonio at 12:35 a.m., on December 31, 2004, revealed a blood alcohol concentration of .114. Authorities arrested Dantonio at the hospital for felony driving under the influence.

Corporals Dangerfield, Breland, and Jarrett of the South Carolina Highway Patrol Multi–Disciplinary Accident Investigation Team (M.A.I.T.) were qualified as experts in the field of collision reconstruction. The team concluded neither roadway nor weather conditions caused the collision. Dantonio appeared to be driving at a minimum of eighty-five (85) miles per hour in a fifty-five (55) mile per hour zone. His speed and the fact that Dantonio was driving under the influence contributed to the accident. The driver of the Honda was not responsible for the collision because she stopped at the stop sign and saw Dantonio's Jeep at least 343 feet down the roadway before she pulled out into the intersection. An animation expert reported the data collected showed the collision would not have occurred if Dantonio had been driving fifty-five (55) miles per hour.

At the close of the State's case, Dantonio moved for a directed verdict of not guilty, arguing the jury could not find beyond a reasonable doubt speed was the proximate cause of the collision. Dantonio averred the trial court should remove the question from the jury by directing the verdict because

the evidence did not support a conclusion Dantonio's speed was the only cause of the accident.

The trial court denied Dantonio's directed verdict motion, clarifying the ruling:

[A]s I understand the law on a motion for directed verdict, the defendant is entitled to a directed verdict when the State fails to produce evidence of the offense charged, and the trial court is charged with the duty that, in reviewing a motion for a directed verdict the trial judge is concerned with the existence of the evidence, not its weight. In other words, if there is direct evidence, or substantial circumstantial evidence, reasonably tending to prove the guilt of the accused, the case should go forward, and that is the standard that I'm using, and I want to make that clear, because I understand that to be the directed verdict standard.

Now, with that I have made some excerpts from the testimony, as I have heard it in this particular case. Ms. Diane Tracy indicated she had questions about the Defendant's condition, and was told the wife had the keys. Ms. Mandoza indicated the accident had happened at night, but that night did not cause a problem to her; she was on the phone with a girlfriend, with an ear piece; that did not cause a problem with her; she was driving a stick-shift; that was not a problem to her; the Defendant was in the other lane, the fast lane; that wasn't a problem; her windows were fogged up, but she rolled one [down], that's not a problem for her; she looks left, right, left, sees the headlights by the cinema sign, and her testimony, as I heard it was, I figured it was safe enough to pull out in front of the Defendant. She says she stopped at the stop sign. She indicates that she was, in no way, responsible for the accident.

Now, whether or not this testimony is believable or not, whether the Court believes it or not, whether it's human nature to deny responsibility for a horrendous accident, or any cause to it, that's not my job. That's the jury's job. I'm concerned with the existence of evidence in this matter.

Further evidence in this case. There is a stipulation of facts. Two young people died as a result of this accident. Mr. Summers stated the Defendant had an odor of alcohol. He stated that—to Mr. Summers that he had a couple of

beers. Corporal Dangerfield stated—though there were different accounts of what occurred, it's very difficult to calculate speed, the—and he indicated the collision occurred in the right lane. Corporal Breland, qualified to give his opinion, stated that the weather was no problem; the road conditions were good; the site and distance were good. He concluded the Defendant was driving eighty-five miles an hour. He said speed contributed to the accident. Corroborated—he said the evidence corroborated drinking; speed at the impact was fifty-five miles an hour. He stated he assumed Ms. Mandoza had stopped at the stop sign. He stated if the Defendant was going fifty-five miles an hour there would have been no wreck. Corporal Jarrett says that a computer animation is a visual representation of what we believe happened; the wreck would not have happened if the Defendant was going fifty-five miles an hour; the Defendant was in the right lane and made an effort to steer away from Ms. Mandoza. Trooper Hughes: The Defendant, at the hospital, had a strong smell of alcohol about him. Ms Barber: The blood alcohol level was zero point one one four at 12:35 A.M., significantly after the accident; the permissive level is zero point zero eight. That being a brief summation of the testimony in this case, there is no question, in this Court's mind that, looking at the existence of evidence that, if that evidence was believed by the jury, there is enough evidence to prove the Defendant guilty of the crimes charged, and at this point in time the Court respectfully declines to grant your motion for a directed verdict.

At the close of all evidence, Dantonio renewed his motion for a directed verdict, professing Mandoza's act of entering the highway played a role in the collision and would preclude a jury finding beyond a reasonable doubt Dantonio's speed was the proximate cause of the collision. The trial court denied Dantonio's motion:

Once again, the Court believes its responsibility, in response to a directed verdict motion, is on this basis, that the defendant is entitled to a directed verdict when the State fails to produce evidence of the offense charged, and the trial judge is concerned with the existence of evidence, not with its weight. If there is direct evidence or substantial

circumstantial evidence reasonably tending to prove the [guilt] of the defendant, the case must be submitted to the jury.

I'm not going to go back and review all of that testimony. I did at the end of the State's case. I just reaffirm that rendition of the facts I previously gave.

Further, in addition to that, I find that the evidence presented thereafter only supports the finding by this Court that there is more than sufficient evidence, if believed by the jury—that being their job, to judge the credibility and believability of the witnesses—but there has been testimony and evidence presented, if believed by the jury, that would prove the Defendant guilty of the crimes charged by the State, and therefore I would respectfully decline to grant your motion for a directed verdict.

On the definition of proximate cause, the trial court instructed the jury:

Proximate cause is the direct cause, the immediate cause, the efficient cause, the cause without which the death would not have resulted. Now, there may be more than one proximate cause. The acts of two or more persons may combine together to be a proximate cause of the death of a person. The Defendant's act may be regarded as the proximate cause if it is the direct cause to the death of the victim. The fact that other causes also contribute to the death of the victim does not relieve the Defendant from responsibility. The Defendant's act need not be the sole cause of death, but it has to be the direct cause, without which the death of the victim would not have resulted, and this has to be proved to you by the State of South Carolina beyond a reasonable doubt.

Dantonio objected to the proximate cause charge:

I believe that the law, the actual law here should be that, unless Mr. D'Antonio is at least fifty-one percent—and I would argue much more—but at least fifty-one percent the proximate cause, that it would be improper for there to be a finding of guilt.

. . .

I would prefer, and feel like it would be more appropriate and more accurately reflect the law if, added to the word

direct, the word main or primary were added, then we would insure that all of us were operating with the understanding that Mr. D'Antonio would have to be at least fifty-one percent proximately causing it in order for him to be found guilty.

The trial court declined to incorporate Dantonio's request, expounding the issued charge properly instructed the jury on the law of proximate cause in South Carolina. Shortly after beginning deliberation, the jury asked to rehear portions of testimony and the jury instructions on proximate cause. The part of the testimony was replayed for the jury, and the trial court reiterated instructions on proximate cause, intervening act, and unavoidable accident. The jury returned a verdict of guilty on the two felony driving under the influence charges. Dantonio was sentenced to two concurrent seventeen-year terms of imprisonment.

## *STANDARD OF REVIEW*

In criminal cases, the appellate court sits to review errors of law only. *State v. Baccus*, 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006); *State v. Douglas*, 367 S.C. 498, 506, 626 S.E.2d 59, 63 (Ct.App.2006) *cert. granted*, June 2007; *State v. Wood*, 362 S.C. 520, 525, 608 S.E.2d 435, 438 (Ct.App. 2004). An appellate court is bound by the trial court's factual findings unless they are clearly erroneous. *State v. Quattlebaum*, 338 S.C. 441, 450, 527 S.E.2d 105, 109 (2000); *State v. Patterson*, 367 S.C. 219, 224, 625 S.E.2d 239, 241 (Ct.App. 2006); *State v. Landis*, 362 S.C. 97, 101, 606 S.E.2d 503, 504 (Ct.App.2004).

## *LAW/ANALYSIS*

### I. Directed Verdict

Dantonio claims the trial court should have directed a verdict of not guilty because the State's evidence did not support a conclusion that the jury could find him guilty beyond a reasonable doubt. We disagree with the standard Dantonio applies and his assignment of error regarding the denial of his directed verdict motion.

■■■ The criterion for denying a directed verdict motion in South Carolina is well established. A case should be submitted to the jury if there is any direct evidence or any substantial circumstantial evidence that reasonably tends to prove the guilt of the accused or from which guilt may be fairly and logically deduced. *State v. Weston,* 367 S.C. 279, 292–93, 625 S.E.2d 641, 648 (2006); *State v. Walker,* 349 S.C. 49, 53, 562 S.E.2d 313, 315 (2002); *State v. Zeigler,* 364 S.C. 94, 102, 610 S.E.2d 859, 863 (Ct.App.2005); *State v. Al–Amin,* 353 S.C. 405, 411, 578 S.E.2d 32, 35 (Ct.App.2003). However, the defendant is entitled to a directed verdict if the state fails to produce evidence of the offense charged. *Weston,* 367 S.C. at 292, 625 S.E.2d at 648; *State v. Moore,* 374 S.C. 468, 474, 649 S.E.2d 84, 86 (Ct.App.2007); *State v. Crawford,* 362 S.C. 627, 633, 608 S.E.2d 886, 889 (Ct.App.2005). In ruling on a motion for directed verdict, the trial court is concerned only with the existence or nonexistence of evidence, not its weight. *Weston,* 367 S.C. at 292, 625 S.E.2d at 648; *Sellers v. State,* 362 S.C. 182, 188, 607 S.E.2d 82, 85 (2005); *State v. Cherry,* 361 S.C. 588, 593–94, 606 S.E.2d 475, 478 (2004); *State v. Rosemond,* 356 S.C. 426, 430, 589 S.E.2d 757, 758–59 (2003). A directed verdict motion should be granted when the evidence merely raises a suspicion of the accused's guilt. *State v. Arnold,* 361 S.C. 386, 390, 605 S.E.2d 529, 531 (2004); *State v. Stanley,* 365 S.C. 24, 42, 615 S.E.2d 455, 464 (Ct.App.2005).

■■■ When reviewing a denial of a directed verdict, an appellate court views the evidence and all reasonable inferences in the light most favorable to the State. *Weston,* 367 S.C. at 292, 625 S.E.2d at 648; *State v. Curtis,* 356 S.C. 622, 633, 591 S.E.2d 600, 605 (2004); *State v. Buckmon,* 347 S.C. 316, 321, 555 S.E.2d 402, 404 (2001); *Moore,* 374 S.C. at 474, 649 S.E.2d at 86. The court may reverse the trial court's denial of a motion for a directed verdict if there is no evidence to support the court's ruling. *Weston,* 367 S.C. at 292, 625 S.E.2d at 648 (citing *State v. Gaster,* 349 S.C. 545, 555, 564 S.E.2d 87, 92 (2002)); *Moore,* 374 S.C. at 474, 649 S.E.2d at 86; *Crawford,* 362 S.C. at 633, 608 S.E.2d at 889. Concomitantly, the court may reverse the trial court's denial of a motion for a directed verdict if the ruling is based on an error of law. *State v. Adams,* 354 S.C. 361, 378, 580 S.E.2d 785, 793–94 (Ct.App.2003).

Section 56–5–2945(A) of the South Carolina Code of Laws (Supp.2006) establishes the elements of felony driving under the influence:

A person who, while under the influence of alcohol, drugs, or the combination of alcohol and drugs, drives a vehicle and when driving does any act forbidden by law or neglects any duty imposed by law in the driving of the vehicle, which act or neglect proximately causes great bodily injury or death to a person other than himself, is guilty of a felony. . . .

■ *State v. Grampus* is the leading case in South Carolina setting forth the elements of felony driving under the influence. 288 S.C. 395, 343 S.E.2d 26 (1986) *abrogated on other grounds by State v. Easler*, 327 S.C. 121, 489 S.E.2d 617 (1997). A felony driving under the influence charge requires proof of three elements: · (1) the actor drives a vehicle while under the influence of alcohol or drugs; (2) the actor does an act forbidden by law or neglects a duty imposed by law; and (3) the act or neglect proximately causes great bodily harm or death to another person. *Id.* at 397, 343 S.E.2d at 27; *accord State v. White* 311 S.C. 289, 428 S.E.2d 740 (Ct.App.1993); *State v. Nathari*, 303 S.C. 188, 399 S.E.2d 597 (Ct.App.1990).

In addition, section 56–5–2950(b)(3) of the South Carolina Code of Laws (Supp.2006) provides in the criminal prosecution of a violation under section 56–5–2945, an alcohol concentration of eight one-hundredths of one percent or more, as shown by chemical analysis of the person's breath or other body fluids, gives rise to the inference the person was under the influence of alcohol.

The State presented evidence satisfying the elements in section 56–5–2945(A) and from which Dantonio's guilt may reasonably and logically be deduced. The jeep Dantonio was driving struck Mandoza's Honda. Testimony indicated Dantonio had been drinking during the hours prior to the accident, and his blood alcohol concentration suggested he was under the influence of alcohol. Collision reconstruction experts opined Dantonio drove in excess of eighty (80) miles per hour in a fifty-five (55) mile per hour speed zone—an act forbidden by law. Moreover, the State introduced evidence that but for Dantonio's speeding, the collision with Mandoza's vehicle would not have occurred. Considering the existence of this

evidence in a light most favorable to the State, we conclude the trial court properly denied Dantonio's motion for a directed verdict.

Dantonio contends, as a matter of law, because a jury could not reasonably find his speeding was the "sole," "main," or "primary" cause of the collision and resulting fatalities, the trial court should remove the case from the jury and direct a verdict. South Carolina precedent concerning proximate cause does not support this assertion.

■■■■■ A defendant's act may be regarded as the proximate cause if it is a contributing cause of the death of the deceased. *State v. Burton*, 302 S.C. 494, 496–97, 397 S.E.2d 90, 91 (1990) (setting out the law of South Carolina on proximate cause in a jury charge). The defendant's act need not be the sole cause of the death, provided it is a proximate cause actually contributing to the death of the deceased. *Id.*

■■■■ "One who inflicts an injury on another is deemed by law to be guilty of homicide where the injury contributes mediately or immediately to the death of the other. The fact that other causes also contribute to the death does not relieve the actor from responsibility." *State v. Riley*, 219 S.C. 112, 112, 64 S.E.2d 127, 130 (1951) (citing *State v. Doe*, 218 S.C. 520, 520, 63 S.E.2d 303, 303 (1951)); *accord State v. Jenkins*, 276 S.C. 209, 211, 277 S.E.2d 147, 148 (1981) (finding one who inflicts an injury on another is deemed by law to be guilty of homicide where the injury contributes mediately or immediately to the death of the other).

Dantonio claims speed, as a contributing factor, is without legal significance because but for Mandoza's entrance onto the highway in front of him, the accident would not have occurred. In support of this position, Dantonio cites *Horton v. Greyhound Corp.*, 241 S.C. 430, 128 S.E.2d 776 (1962). *Horton* involved a claim alleging negligence in the death of a passenger who was killed when the truck he was riding in collided with defendant Greyhound's bus. *Id.* at 430, 128 S.E.2d at 778. The trial court directed a verdict in Greyhound's favor. The sole issue on appeal was whether Horton sustained the burden of producing evidence to support a reasonable inference of causal connection between the speed of the bus and the fatal collision. *Id.*

The driver of the truck in which Horton's decedent was a passenger executed an unlawful turn from behind another vehicle into the southbound lane of oncoming traffic. *Id.* The Greyhound bus, traveling south at an allegedly high rate of speed, collided with the truck. *Id.* In reviewing the trial court's ruling, the South Carolina Supreme Court acknowledged the evidence was sufficient to raise a jury issue as to whether the bus was being operated at an excessive rate of speed. *Id.* However, the overarching issue was whether a reasonable inference of causal connection between the bus's speed and the collision could be drawn. *Id.* at 430, 128 S.E.2d at 781.

> In affirming the directed verdict, our Supreme Court stated: It is abundantly clear that the primary efficient cause of the collision was the unlawful act of the truck driver in turning his north bound vehicle into the southbound lane of travel, which was occupied by the approaching bus. It is equally clear that the only evidence of a negligent or unlawful act by the bus driver relates to excessive speed, which could not have resulted in harm to [decedent] if the truck had remained in its proper lane of travel. The concurrence of excessive speed with this primary, efficient cause of the collision does not impose liability on the defendants unless, without it, the collision would not have occurred.

*Id.*

The Court emphasized speed, as a contributing factor in placing the bus in a particular location on the highway, was without legal significance. *Id.* Greyhound was rightfully in the proper lane of traffic on that portion of the highway. The accident would not have occurred but for the truck driver's unlawful turn into the path of the oncoming bus. Horton failed to establish evidence sufficient to raise a reasonable inference that the collision would not have occurred but for the negligence of the bus driver. *Id.* at 430, 128 S.E.2d at 781–82.

In *Clark v. Cantrell*, we observed that the application of *Horton* is limited to cases with specific factual scenarios. 332 S.C. 433, 444, 504 S.E.2d 605, 611 (Ct.App.1998) *aff'd as modified by* 339 S.C. 369, 529 S.E.2d 528 (2000). "Each of those cases involved entry of a vehicle from a servient road-

way onto the main highway, in such an abrupt fashion that an accident could not have been avoided, notwithstanding the excessive speed of the oncoming vehicle." *Id.* (quoting *Tubbs v. Bowie*, 308 S.C. 155, 158, 417 S.E.2d 550, 552 (1992)).

*Horton* is factually distinguishable from the case *sub judice* and does not support Dantonio's assertion of error. Horton's evidence failed to raise a reasonable inference that but for the speed of the bus, the fatal collision would not have occurred. Here, the State presented evidence clearly supporting the inference that but for excessive speed, Dantonio's Jeep would not have collided with Mandoza's Honda and been propelled across the median into oncoming traffic. Unlike the truck driver in *Horton,* Mandoza turned onto the highway lawfully, into the appropriate lane of traffic. She believed Dantonio's vehicle was far enough away for her to safely turn into the right lane. There is no evidence she entered the roadway so abruptly that the accident could not have been avoided.

Collision reconstruction testimony indicated Dantonio was traveling significantly in excess of the lawful speed limit. Additionally, medical test results showed Dantonio was likely under the influence of alcohol. Experts opined if Dantonio had driven at fifty-five (55) miles per hour, the lawful speed limit, he would not have collided with Mandoza. The impact with Mandoza's Honda thrust his Jeep across the median and into another vehicle, killing the two occupants. This evidence, if believed by the jury, could lead to the fair and logical deduction that Dantonio's unlawful conduct was the proximate cause of the fatalities. The trial court did not err as a matter of law in submitting the case to the jury.

## II. Jury Instruction

■ Dantonio alleges the trial court erred in charging the law on proximate cause. Specifically, Dantonio argues the words "main" or "primary" should supplement the word "direct" in defining proximate cause. We discern no error in the trial court's instruction.

■ Generally, a trial court is required to charge only the current and correct law of South Carolina. *State v. Rayfield*, 369 S.C. 106, 119, 631 S.E.2d 244, 251 (2006); *Sheppard v. State*, 357 S.C. 646, 665, 594 S.E.2d 462, 472–73 (2004);

*State v. Zeigler,* 364 S.C. 94, 106, 610 S.E.2d 859, 865 (Ct.App. 2005); *State v. Brown,* 362 S.C. 258, 261–62, 607 S.E.2d 93, 95 (Ct.App.2004). A jury charge is correct if it contains the correct definition of the law when read as a whole. *Rayfield,* 369 S.C. at 119, 631 S.E.2d at 251; *Sheppard,* 357 S.C. at 665, 594 S.E.2d at 473; *State v. Patterson,* 367 S.C. 219, 231, 625 S.E.2d 239, 245 (Ct.App.2006) *cert. denied* May 3, 2007; *State v. Adkins,* 353 S.C. 312, 318, 577 S.E.2d 460, 463 (Ct.App. 2003).

The law to be charged to the jury is determined by the evidence presented at trial. *State v. Knoten,* 347 S.C. 296, 302, 555 S.E.2d 391, 394 (2001); *State v. Cole,* 338 S.C. 97, 101, 525 S.E.2d 511, 512 (2000); *State v. Condrey,* 349 S.C. 184, 194, 562 S.E.2d 320, 325 (Ct.App.2002); *State v. Harrison,* 343 S.C. 165, 172, 539 S.E.2d 71, 74 (Ct.App.2000) (citing *State v. Hill,* 315 S.C. 260, 262, 433 S.E.2d 848, 849 (1993)). A trial court has a duty to give a requested instruction that is supported by the evidence and correctly states the law applicable to the issues. *State v. Peer,* 320 S.C. 546, 553, 466 S.E.2d 375, 380 (Ct.App.1996); *see also State v. Austin,* 299 S.C. 456, 458, 385 S.E.2d 830, 831 (1989) (acknowledging a defendant is generally entitled to a requested jury instruction if it is a correct statement of the law on an issue raised by the indictment); *State v. West,* 138 S.C. 421, 421, 136 S.E. 736, 737 (1927) (finding the court has a duty to charge jury as to law applicable to facts brought out in testimony).

A trial court commits reversible error if it fails to give a requested charge on an issue raised by the evidence. *State v. White,* 361 S.C. 407, 412, 605 S.E.2d 540, 542 (2004); *State v. Burriss,* 334 S.C. 256, 262, 513 S.E.2d 104, 108 (1999); *Harrison,* 343 S.C. at 172, 539 S.E.2d at 74. On review of a jury charge, an appellate court considers the charge as a whole in view of the evidence and issues presented at trial. *Welch v. Epstein,* 342 S.C. 279, 311, 536 S.E.2d 408, 425 (Ct.App.2000).

In *State v. Burton,* our Supreme Court acknowledged language in the following jury instruction as the correct law to be charged on proximate cause:

The law recognizes there may be more than one proximate cause. The acts of two or more persons may combine and

concur together as an efficient or proximate cause of the death of a person.

The defendant's act may be regarded as the proximate cause if it is a contributing cause of the death of the deceased. The defendant's act need not be the sole cause of the death provided that it be a proximate cause actually and contributing to the death of the deceased.

One who inflicts an injury on another is deemed by law to be guilty of the homicide if the injury contributes mediately or immediately to the death of the deceased. The fact that other causes also contribute to the death of the deceased does not relieve the defendant from responsibility.

You have to be convinced beyond a reasonable doubt that the defendant was the cause of death. A person who inflicts a fatal injury upon a person and that person dies at a later time, you have to be convinced beyond a reasonable doubt that the infliction of the first injury was the cause of death, that it was the proximate cause, that there was a chain of causation from the time it happened until the time of the death. The fact that other things contributed to it or speeded it up, things of that sort, that is not a defense. . . .

302 S.C. 494, 496–97, 397 S.E.2d 90, 91 (1990); *see also State v. Jenkins,* 276 S.C. 209, 277 S.E.2d 147 (1981); *State v. Riley,* 219 S.C. 112, 112, 64 S.E.2d 127, 130 (1951).

On examination of the trial court's charge, we conclude the jury was properly instructed on the current and correct law of South Carolina regarding proximate cause. The trial court's language substantially follows the jury charge on proximate cause articulated in *Burton.* Moreover, we are unaware of any precedent, and Dantonio does not cite any authority, for incorporating the words "main" or "primary" as part of the jury instruction on proximate cause.

## CONCLUSION

We hold the trial court applied the proper standard in denying Dantonio's motion for directed verdict. The State presented evidence from which Dantonio's guilt could be fairly and logically deduced. The case was properly submitted to the jury. We rule the trial court's charge on proximate cause

accurately reflected the current and correct law of South Carolina.

Accordingly, Dantonio's convictions and sentences are

**AFFIRMED.**

SHORT and WILLIAMS, JJ., concur.