# Supreme Court of Louisiana

The Opinions handed down on the **26th day of June, 2019**, are as follows:

**BY CLARK, J.**:

2017-K-2084          STATE OF LOUISIANA v. DAVID LEGER (Parish of E. Baton Rouge)

We granted certiorari in this case to review a judgment of the First Circuit Court of Appeal that modified defendant David Leger's five vehicular homicide convictions to negligent homicide, vacated his sentences and remanded for resentencing. Specifically, we consider whether the state presented sufficient evidence that defendant's intoxication was a contributing factor to the fatal accident, as provided in La. R.S. 14:32.1. After reviewing the applicable law and the evidence, we find the state proved by sufficient evidence that defendant's intoxication was a contributing factor to the fatal accident, and, thus, vacate the court of appeal judgment, reinstate the trial court judgment, and remand for the court of appeal to consider the pretermitted assignments of error.

VACATE COURT OF APPEAL JUDGMENT; REINSTATE TRIAL COURT JUDGMENT; AND REMAND.

HUGHES, J., dissents with reasons.

SUPREME COURT OF LOUISIANA

No. 2017-K-2084

STATE OF LOUISIANA

VERSUS

DAVID LEGER

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIRST CIRCUIT, PARISH OF EAST BATON ROUGE

**CLARK, J.**

We granted certiorari in this case to review a judgment of the First Circuit Court of Appeal that modified defendant David Leger's five vehicular homicide convictions to negligent homicide, vacated his sentences and remanded for resentencing. Specifically, we consider whether the state presented sufficient evidence that defendant's intoxication was a contributing factor to the fatal accident, as provided in La. R.S. 14:32.1. After reviewing the applicable law and the evidence, we find the state proved by sufficient evidence that defendant's intoxication was a contributing factor to the fatal accident, and, thus, vacate the court of appeal judgment, reinstate the trial court judgment, and remand for the court of appeal to consider the pretermitted assignments of error.

**FACTS**

On March 13, 2011, around 8:30 p.m., Kelsye Hall was driving her green Mercedes SUV westbound on I-10 in the Prairieville area. She was the sole occupant of that vehicle. Traveling in the same direction, defendant drove a white pick-up truck with his wife in the front passenger seat.[1] Independent witnesses Dara Soulier and Kevin Patton, who also were driving westbound on I-10 at the time, described at trial that defendant and Hall had engaged in what appeared to be "road rage" or a

---

[1] Defendant's wife did not testify at his trial, presumably due to the spousal witness privilege found in La.C.E. art. 505.

high-speed game of "cat and mouse" over a course of several miles.  Hall's vehicle was the lead vehicle, and according to Soulier, it appeared that Hall was attempting to prevent defendant from passing.

Hall testified at trial as a state witness, but she disputed the independent witnesses' descriptions of her behavior.[2]  Hall indicated that as she was driving on I-10, defendant approached from the rear and began to flash his vehicle's high beams while he drove behind her. Hall admitted that she repeatedly changed lanes in moderate traffic but explained that she did so in an effort to allow defendant to pass her, which he never did.

Just before the Highland Road exit in East Baton Rouge Parish, the left rear bumper of defendant's truck collided with the front right bumper of Hall's vehicle.[3] The collision sent defendant's truck across the median and into the eastbound lanes of I-10 where he first collided with an 18-wheeler and then with a vehicle driven by Effie Fontenot; her three sons, Austin Fontenot, Hunter Johnson, and Keagan Fontenot; and her co-worker, Kimberly Stagg.  The Fontenot vehicle caught fire, and none of its occupants were able to escape.

Soulier testified at trial that although she never actually saw defendant's truck on the shoulder of the roadway, she observed a vehicle's taillights on the shoulder just before the collision between defendant's and Hall's vehicles.  Patton testified that defendant's white truck was on the shoulder at the time of the collision. Hall initially testified that defendant's vehicle was on the shoulder at the time of the

---

[2] Hall was previously convicted in a judge trial of five counts of negligent homicide for her role in the incident, and she had recently been released from jail before defendant's trial in July 2014.

[3] Neither the state's expert, State Trooper Darryl Davis, nor the defense expert, Michael Gillen, could pinpoint exactly where on the roadway this collision occurred, nor could they definitively say precisely what type of relative motion between the vehicles caused the impact. The defense witness opined that the straightforward continuation of Hall's vehicle indicated an awareness on her part of the impending impact.

2

collision, but she described on cross-examination that her own vehicle was straddling both lanes of the interstate because she no longer knew what to do to get defendant to pass her. On redirect, Hall again stated that defendant was on the shoulder when he attempted to pass her.[4]

Defendant voluntarily gave a blood sample at the hospital just over two hours after the crash. The parties stipulated at trial that a test of this sample showed a blood alcohol concentration ("BAC") of 0.10 percent. State troopers also recovered from defendant's mangled truck a partially empty, but intact and capped, bottle of Captain Morgan spiced rum. State Trooper Burnell Thomspon, an officer who had been at the accident scene and then relocated to the hospital to secure defendant's blood sample, testified at trial that he believed defendant had been drinking, but did not articulate any particular facts upon which that suspicion was based (*e.g.*, an odor of alcohol, behavioral manifestations, etc.). Hall submitted to a breathalyzer test that showed no indication of alcohol consumption.

Defendant called as his sole witness an expert in accident reconstruction, Michael Gillen. Gillen opined that the sudden redirection of defendant's truck was the result of the collision with Hall's vehicle, which effectively resulted in the application of a Precision Immobilization Technique (PIT) maneuver.[5] He described that no person, drunk or sober, could avoid the change in direction that resulted. Gillen explained that although tire marks indicated defendant's vehicle rotated counter-clockwise through the median, this rotation had ceased by the time defendant's vehicle exited the median. He estimated the time defendant spent in the

---

[4] Under any of these witnesses' versions of the incident, it appears that defendant's vehicle at least partially drove on the right shoulder of the roadway as he attempted to pass Hall.

[5] Gillen explained that police generally use a PIT maneuver during a vehicle pursuit to disable the forward progress of a vehicle with minimal force.

median as one-and-one-half seconds, meaning that defendant took corrective steering measures within a normal (*i.e.*, sober) range of perception.

Given the aforementioned facts and evidence, the jury found defendant guilty as charged of five counts of vehicular homicide. See La. R.S. 14:32.1. However, the court of appeal found that the state failed to carry its burden of proving that defendant's intoxication was a contributing factor to the deaths of the five victims. See *State v. Leger*, 17-0461, p.12 (La. App. 1 Cir. 11/15/17), 236 So.3d 577 at 586. While the court acknowledged that the defendant was intoxicated, it found that the jury "did not have further evidence as to defendant's appearance, observable signs of impairment, the effect of such a blood alcohol level upon a reasonable person, or other evidence from which to reasonably infer beyond a reasonable doubt that the defendant's intoxication was a contributing factor to this collision . . . ." *Id.*, 17-0461, p. 14, 236 So.3d at 587. Finding the proof of defendant's actions sufficient to support convictions for negligent homicide, see La. R.S. 14:32, the court of appeal modified the verdicts and vacated defendant's sentences accordingly. See *Leger*, 17-0461, p. 15, 236 So.3d at 588.[6]

We granted the state's writ application to review the court of appeal judgment. See *State v. Leger*, 17-2084 (La. 1/18/19), ____ So. 3d ___, 2019 WL 290250.

## DISCUSSION

In the briefs submitted to the Court and at oral argument, the parties acknowledged that the facts, for the most part, are not in dispute. However, the state urges this Court to make one distinct finding with regard to causation. The state submits that in a vehicular homicide case, the prosecution does not have to prove a

---

[6] The court of appeal addressed three additional assignments of trial error, but found them to lack merit. It pretermitted discussion of assignments of error related to defendant's proposed jury instructions on causation and excessive sentences.

4

defendant's intoxication was the sole cause of the killing. See *State v. Beene*, 49,612 (La. App. 2 Cir. 4/15/15), 164 So.3d 299; *State in the Interest of R.V.*, 11-0138 (La. App. 5 Cir. 12/13/11), 82 So.3d 402; and *State v. Thomas*, 05-2210 (La. App. 1 Cir. 6/9/06), 938 So.2d 168). The state argues that the evidence presented at trial was sufficient to prove that defendant's operation of his vehicle in an intoxicated condition resulted in defendant's losing control of his vehicle and colliding with the victims. The state posits that the guilty verdicts indicate the jury reasonably rejected defendant's claim that his intoxication was not a direct, proximate cause of the deaths of the five victims.

Defendant, on the other hand, argues that no witnesses at trial described behaviors or manifestations of his alleged impairment. He argues that nothing the jury considered could have led them to reasonably conclude that his intoxication was a contributing factor to the accident or to distinguish his actions from the reckless behavior of Kelsye Hall, who, indisputably, was not intoxicated. Thus, defendant asks this Court to affirm the appellate court judgment.

At the time of the fatal accident, the vehicular homicide statute read, in pertinent part:

> A. Vehicular homicide is the killing of a human being caused proximately or caused directly by an offender engaged in the operation of, or in actual physical control of, any motor vehicle . . . whether or not the offender had the intent to cause death or great bodily harm, *whenever any of the following conditions exists and such condition was a contributing factor to the killing*:
>
> (1) The operator is under the influence of alcoholic beverages as determined by chemical tests administered under the provisions of R.S. 32:662.
>
> (2) The operator's blood alcohol concentration is 0.08 percent or more by weight based upon grams of alcohol per one hundred cubic centimeters of blood.

5

La. R.S. 14:32.1 (prior to amendment by 2012 La. Acts 662, *et al.*) (emphasis added).[7]

The seminal Louisiana vehicular homicide case is *State v. Taylor*, 463 So.2d 1274 (La. 1985). In *Taylor*, the defendant moved to quash the bill of information, alleging the unconstitutionality of a slightly different version of the vehicular homicide statute:

> A. Vehicular homicide is the killing of a human being caused proximately or caused directly by an offender engaged in the operation of, or in actual physical control of, any motor vehicle . . . whether or not the offender had the intent to cause death or great bodily harm, when:
>
> (1) the offender is under the influence of alcoholic beverages, as determined by chemical tests administered under the provisions of R.S. 32:662; or
>
> (2) the offender's blood alcohol concentration is 0.10 percent or more by weight based upon grams of alcohol per one hundred cubic centimeters of blood.

La. R.S. 14:32.1 (as originally enacted by 1983 La. Acts 635, § 1).[8] Taylor argued, and the trial court agreed, that the statute set up an unconstitutional presumption that a traffic fatality caused by an operator with a BAC of 0.10 or more is presumed to have resulted from a defendant's negligent operation and unlawful BAC, thereby relieving the state of its burden of proof. See *Taylor*, 463 So.2d at 1275. Thus, the trial court found the statute unconstitutional and quashed the bill.

---

[7] The version of the vehicular homicide provision in effect at the time of defendant's offense did not contain the mandatory consecutive sentences provision now found in La. R.S. 14:32.1(D) for offenses that cause the deaths of two or more human beings.

[8] The *Taylor* Court, in footnote 1, referenced the version of the vehicular homicide statute it interpreted, but the offense in that case occurred on February 10, 1984, which was prior to the effective date of the 1984 amendment of the statute (which itself did not change the statute in any way relevant to the analysis).

On appeal, this Court declined to view the statute "as creating any presumptions" and instead concluded that "under the vehicular homicide statute, the state, in order to convict, must prove that an offender's unlawful blood alcohol concentration combined with his operation of a vehicle to cause the death of a human being." *Taylor*, 463 So. 2d at 1275. The Court explained:

> The evident purpose of the vehicular homicide statute is to curb traffic fatalities caused by the consumption of alcohol. It is not aimed at persons involved in vehicular fatalities whose alcohol consumption does not cause but merely coincides with such an accident. . . .
>
> * * *
>
> At the common law, criminal liability for a killing attached in the following situations: (1) a killing caused by an act committed with the intent to kill or cause bodily harm, which is not excused by other principles of law; (2) a killing caused by criminal negligence, regardless of the actor's intent; (3) an accidental or unintended killing caused by an unlawful act. . . . Vehicular homicide fits neatly within the third category above if the driver's intoxication impaired driving (the unlawful act) must cause the death; if not, the crime would be an aberration from common law principles.

*Id.*, 463 So.2d at 1275-76 (citation omitted). Thus, the Court found the vehicular homicide statute was not unconstitutional.

Then-Justice Calogero concurred, noting his hesitation to subscribe fully to the Court's opinion. In his view, the statute required a showing that the unlawful BAC has caused, or been accompanied by, at least negligent or substandard operation of the vehicle. Otherwise, he wrote, he could not quite understand how an unlawful BAC could cause the death of a victim. See *id.*, 463 So.2d at 1276 (Calogero, J., concurring).

Since *Taylor*, the intermediate courts of appeal have relied on that case to require proof of a causal connection between a defendant's intoxication and the victim's death. See, *e.g., State v. Archer*, 619 So.2d 1071, 1074 (La. App. 1 Cir.),

7

*writ denied*, 626 So.2d 1178 (La. 1993); *State v. Dock*, 49,784, p. 11 (La. App. 2 Cir. 6/3/15), 167 So.3d 1097, 1104; *State v. Bailey*, 04-1571, pp. 3–4 (La. App. 3 Cir. 4/6/05), 905 So.2d 303, 305–06, *writ denied*, 05-2057 (La. 3/10/06); *State v. Lewis*, 13-1588, p. 17 (La. App. 4 Cir. 8/27/14), 147 So.3d 1251, 1261, *writ denied*, 14-1992 (La. 5/15/15), 170 So.3d 158; *State in the Interest of R.V.*, 11-0138, pp. 11–12 (La. App. 5 Cir. 12/13/11), 82 So.3d 402, 409.

The aforementioned cases suggest that the *Taylor* opinion remains a driving force in the sufficiency of evidence analysis for vehicular homicide cases. However, we conclude that: 1) *Taylor*— because it was not a sufficiency case — offered little guidance as to the proper sufficiency analysis in vehicular homicide cases, except to clarify the elements of the crime; and 2) since 2008 courts have over-relied on *Taylor* instead of looking to the plain text of the vehicular homicide statute.

"Legislation is the solemn expression of the legislative will; thus, the interpretation of legislation is primarily the search for the legislative intent." *Pierce Foundations, Inc. v. JaRoy Construction, Inc.*, 2015-0785, p. 6 (La. 5/3/16), 190 So. 3d 298, 303 (citations omitted). The starting point for interpretation of any statute is the language of the statute itself. *Id.* When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the legislative intent. *Id.*; La. R.S. 1:4; *Succession of Boyter*, 99-0761, p. 9 (La. 1/7/00), 756 So. 2d 1122, 1128-29. Further, a statute must be interpreted and applied in a manner consistent with logic and the presumed fair purpose and intention of the legislature in passing it. *MAW Enterprises, L.L.C. v. City of Marksville*, 14-0090, p.12 (La. 9/3/14), 149 So. 3d 210, 218; see also La. R.S. 14:3.

In upholding the vehicular homicide statute, the *Taylor* Court read into the statute a causation requirement that arguably did not exist in its 1983 text. Recall that this 1983 version read:

> A. Vehicular homicide is the killing of a human being caused proximately or caused directly by an offender engaged in the operation of, or in actual physical control of, any motor vehicle . . . whether or not the offender had the intent to cause death or great bodily harm, when:
>
> [the offender is in one of several intoxicated states].

La. R.S. 14:32.1 (as originally enacted by 1983 La. Acts 635, § 1). Thus, under the actual text of the statute, a vehicular homicide conviction actually required only: 1) the killing of a human being; 2) caused proximately or caused directly by an offender engaged in the operation of, or in actual physical control of, any motor vehicle; and 3) a prohibited degree of intoxication. Most notably, the text of the statute required only a link of proximate or direct causation between the killing and the operation of the vehicle. After *Taylor*, the state was required to prove that "an offender's unlawful [BAC] "combined with his operation of a vehicle to cause the death of a human being." See *Taylor*, 463 So.2d at 1275.

*Taylor* did not explicitly qualify the exact nature of the causation required between the intoxication and death. As a result, some courts analyzed whether a defendant's intoxication was a "proximate cause" or "substantial factor" in the death of the victim. See, *e.g., State v. Gourdine*, 41,469, pp. 9–11 (La. App. 2 Cir. 12/13/06), 946 So.2d 277, 284–85. Others adhered to the exact "combined with" language used in *Taylor* to conduct their analyses. See, *e.g., Archer* and *Bailey*, *supra*.

In 2008, the legislature amended La. R.S. 14:32.1 to what is substantially its current form. It added to Subsection (A) the causation-qualifying phrase: "whenever

9

any of the following conditions exist and such condition was a contributing factor to the killing." La. R.S. 14:32.1(A) (as amended by 2008 La. Acts 451, § 2). As alluded to above, it does not appear that any intermediate appellate courts have considered what, if any, changes this language might have caused with respect to vehicular homicide cases.

We find that the 2008 legislative amendment embodied and clarified the *Taylor* causation requirement to make it more workable as a matter of proof. The plain text of the statute now requires the state to prove four things: 1) the killing of a human being; 2) caused proximately or caused directly by an offender engaged in the operation of, or in actual physical control of, any motor vehicle; 3) a prohibited degree of intoxication; and 4) a link between the intoxication and the killing. Most importantly, the link between the intoxication and the killing does not have to be a "proximate cause," but simply a "contributing factor."[9]

A "proximate cause" is one that directly produces an event and without which the event would not have occurred. See Black's Law Dictionary (10th ed. 2014). By contrast, a "contributing cause" is a factor that - though not the primary cause - plays a part in producing a result. See *id.* A "factor" is an agent or cause that contributes

---

[9] A survey of the vehicular homicide laws of the other 49 states plus the District of Columbia indicates that most other jurisdictions require some degree of causal connection between the intoxication and the killing. For example, some courts require that the intoxication be a "proximate cause" of the killing. See, *e.g., State v. LeRoy*, 653 A.2d 161 (Conn. 1995); *State v. Bartlett*, 525 N.W.2d 237 (Neb. App. 1994); *Hodgins v. State*, 706 P.2d 655 (Wyo. 1985); and *State v. McGill*, 336 S.E.2d 90 (N.C. 1985). Others use slightly different language and approach the issue in idiosyncratic ways. See, *e.g., People v. Baker*, 826 N.Y.S.2d 550 (Essex Cty. 2006) (intoxication must be "causally connected to the cause of death"); *State v. Munoz*, 970 P.2d 143 (N.M. 1998) ("significant link between the victim's death and the defendant's act of reckless driving or driving while intoxicated"); *Com. v. Molinaro*, 631 A.2d 1040 (Pa. 1993) ("intoxication was a direct and substantial cause of the accident and of the victim's death"). At least one other state equates a proximate cause and a contributing cause. See *State v. Dantonio*, 658 S.E.2d 337 (S.C. 2008) ("A defendant's act may be regarded as the proximate cause if it is a contributing cause of the death of the deceased."). Finally, the minority view appears to be that the intoxication must also be accompanied by negligent operation. See, *e.g., State v. Lamont*, 631 N.W.2d 603 (S.D. 2001); *State v. Riggs*, 987 P.2d 1281 (Utah Ct. App. 1999) (abrogated on other grounds); *Webber v. State*, 577 A.2d 58 (Md. Ct. App. 1990).

to a particular result. See *id*.; see also "Factor," *American Heritage Dictionary* (5th ed. 2019) ("One that actively contributes to an accomplishment, result, or process"). Therefore, the 2008 amendment was a subtle but important change for vehicular homicide cases.

Nonetheless, we fully agree with the Court's statement in *Taylor* that "[t]he evident purpose of the vehicular homicide statute is to curb traffic fatalities caused by the consumption of alcohol." *Taylor*, 463 So.2d at 1275. Thus, we find it is reasonable to hold intoxicated drivers to a higher standard of care in order to discourage that behavior and effectuate the legislative intent.

To further clarify, this interpretation of the statute in no way absolves the state from its burden of proving every element of vehicular homicide beyond a reasonable doubt. Just as with other offenses, however, the exact nature of the proof the state is required to submit will vary on a case-by-case basis. In some instances, the state likely would have to introduce expert testimony concerning the probable physiological effects of the intoxicant ingested by the defendant, especially in a case involving a prohibited substance other than alcohol. In other situations—perhaps where a defendant has an exorbitant BAC, loses consciousness while driving, and causes an accident as a result—proof of the BAC and associated acts would almost certainly prove sufficient.

We turn now to consider defendant Leger's actions on the night of the fatal accident. None of defendant's actions following the collision with Hall's vehicle matters all that much. That is, even accepting defense expert Gillen's testimony as true that defendant took corrective—but futile—actions within a normal range of human perception, the stipulated-to intoxication still appears to have been at the very least a "contributing" factor to the victims' deaths. Independent witnesses Soulier and Patton described defendant's and Hall's vehicles engaging in a high-speed game

11

of "cat and mouse" over the course of several miles of I-10. Together, they weaved in and out of traffic with neither vehicle ever disengaging from the other. Whether Hall actively was preventing defendant from passing or not, it is undisputed that: 1) defendant attempted to pass Hall on the right, and 2) he drove his vehicle at least partially upon the shoulder while doing so, both in addition to the erratic, aggressive behavior he showed before those unfortunate decisions.

"In reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is controlled by the standard enunciated by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) . . . . [T]he appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt." *State v. Captville*, 448 So.2d 676, 678 (La. 1984). Where a conviction is based on circumstantial evidence, as is the case here, the evidence "must exclude every reasonable hypothesis of innocence." La. R.S. 15:438.

In addition, the *Jackson* standard of review does not allow a jury to speculate on the probabilities of guilt where rational jurors would necessarily entertain a reasonable doubt. *State v. Mussall*, 523 So.2d 1305, 1311 (La. 1988) (citing 2 C. Wright, *Federal Practice & Procedure, Criminal 2d*, § 467). The requirement that jurors reasonably reject the hypothesis of innocence advanced by the defendant in a case of circumstantial evidence presupposes that a rational rejection of that hypothesis is based on the evidence presented, not mere speculation. See *State v. Schwander*, 345 So.2d 1173, 1175 (La. 1978). Nonetheless, the *Jackson* standard "leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic

12

facts to ultimate facts.'" *Coleman v. Johnson*, 566 U.S. 650, 655, 132 S.Ct. 2060, 2064, 182 L.Ed.2d 978 (2012).

Viewing the evidence presented at trial in the light most favorable to the prosecution, it is unquestionable that defendant's operation of the vehicle was a direct cause of the victims' deaths and that he operated the vehicle while intoxicated. The only question is whether his intoxication was a "contributing factor" to the killings. See La. R.S. 14:32.1(A).

"Causation is a question of fact which has to be considered in the light of the totality of the circumstances surrounding the ultimate harm and its relation to the actor's conduct." *State v. Kalathakis*, 563 So.2d 228, 231 (La. 1990). While a defendant should not be held responsible for remote and indirect consequences which a reasonable person could not have foreseen as likely to have flowed from his conduct or from those which would have occurred regardless of his conduct, see *id.*, the consequences of defendant's behavior in this case are not so far removed from his conduct that he should be absolved for his intoxicated state.

Defendant and the court of appeal are correct that the state did not introduce evidence at trial concerning defendant's behavioral manifestations after the collision. However, the state introduced compelling circumstantial evidence of his aggressive behavior prior to the collision with Hall, including: driving erratically and at a high speed, flashing his bright lights, and attempting to pass Hall on the right while driving his vehicle at least partially on the shoulder. Based on their own experiences dealing with intoxicated people, the jury could have rationally inferred that defendant's intoxication—which was undisputed—was a contributing factor in the sequence of events that led to his truck colliding with Hall's vehicle, crossing the median, slamming into two vehicles, and killing five victims.

13

Further, the jury rationally rejected the hypothesis of innocence proposed by defendant that his intoxication could be forgiven and found not to be a contributing factor because Hall engaged in equally combative behavior despite being sober. The state is correct that it did not have to prove that defendant's intoxication was the sole cause of the accident. See *Beene* and *R.V.*, *supra*. The court of appeal improperly focused upon Hall's lack of intoxication as an excuse for defendant's actions despite his intoxication. See *Leger*, 17-0461, p. 14, 236 So.3d at 587 ("In fact, the jury had before it evidence of the actions and omission of the co-defendant Hall, which showed equally bad behavior without intoxication, and there was insufficient evidence to differentiate their criminal behaviors . . . ."). Instead, the jury could have rationally concluded that defendant's intoxication either spurred his aggressive behavior, resulted in his refusal to withdraw from a dangerous situation, or both.

Moreover, the court of appeal essentially asked the state to present additional evidence of intoxication and causation, but the parties had already stipulated to the former, and the pre-collision evidence showed the latter. See *id.* ("Accordingly, the jury had before it the report confirming the defendant's blood alcohol concentration, but it did not have further evidence as to the defendant's appearance, observable signs of impairment, the effect of such a blood alcohol level upon a reasonable person, or other evidence from which to reasonably infer beyond a reasonable doubt that the defendant's intoxication was a contributing factor to this collision, an element of the crime of vehicular homicide."). The court of appeal focused too narrowly on the events following defendant's collision with Hall, but the damage was set into motion in the miles and minutes before then.

We find the state presented sufficient evidence that defendant Leger's intoxication was a contributing factor in the deaths of the five victims where he drove aggressively and engaged in a high-speed game of "cat and mouse" that led to their

deaths. The jury's inference that defendant's intoxication led to that aggressive behavior was perfectly reasonable considering the facts and evidence presented at trial.

**DECREE**

Accordingly, for the above reasons, we vacate the court of appeal judgment, reinstate the trial court judgment, which convicted and sentenced defendant on five counts of vehicular homicide, and remand the matter to the court of appeal to consider the pretermitted assignments of error.

**VACATE COURT OF APPEAL JUDGMENT; REINSTATE TRIAL COURT JUDGMENT; AND REMAND**

06/26/19

**SUPREME COURT OF LOUISIANA**

**No. 2017-K-2084**

**STATE OF LOUISIANA**

**VERSUS**

**DAVID LEGER**

**ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIRST CIRCUIT, PARISH OF EAST BATON ROUGE**

**Hughes, J.**, dissenting.

In a criminal case the prosecution is required to prove each and every element of the offense charged beyond a reasonable doubt. The element at issue in this case is whether alcohol was a contributing factor in the accident. There is absolutely no proof that it was. The best this court could come up with is "Based on their own experiences dealing with intoxicated people, the jury could have rationally inferred that defendant's intoxication which - was undisputed - was a contributing factor in the sequence of events that led to his truck colliding with Hall's vehicle, crossing the median, slamming into two vehicles, and killing five victims."

This rationale is wrong in several ways. Any inference that jurors may theoretically have drawn is not proof beyond a reasonable doubt. The jurors did not testify about their "experiences dealing with intoxicated people." Perhaps there were some teetotalers on the jury. This is all rank speculation. But on a concrete level, the physical evidence shows that defendant's truck did not collide with Hall's vehicle; rather, Hall caused the accident by running into the rear of defendant's vehicle after he finally passed her on the right, despite her efforts to prevent him from doing so by swerving from lane to lane.

The photographs introduced into evidence in this case are the most disturbing I have ever seen. But apparently they were not considered by the majority, as they

also show that the green Mercedes of Hall ran into the left rear of defendant's truck after he passed her. The damage to Hall's vehicle is to the right front of her car, a broken right headlight and a small dent to the left of the headlight. There is no damage to the right side. After contact her path was straight down the highway. If defendant had hit the Hall vehicle by cutting in front of her after he passed her, there would have been damage to her right side and her path would have been altered from straight ahead to the left.

Instead, the blow to defendant's left rear caused his truck to rotate counter clock-wise and travel to the left. His tire tracks crossing the median show this spin and subsequent recovery. By then, however, he was across the median where he glanced off an eighteen wheeler and then struck the victim's vehicle. The physical evidence supports the uncontradicted expert testimony given at trial, which indicates that no person, drunk or sober, could have maintained control under the circumstances.

There was no testimony from any of the responding officers that defendant appeared or acted intoxicated. While in no way excusing defendant's road-rage contest with Ms. Hall because she would not let him pass, the physical evidence shows that this accident was caused by Ms. Hall, and there is no evidence that alcohol use was a contributing factor. Sticking defendant with a heavier penalty may feel right, but it does not achieve justice. The opinion of the court of appeal is correct and should be affirmed.