17097

THE STATE, Respondent, v. HENRY L. BOONE, Appellant

(90 S. E. (2d) 640)

*Messrs. Jonathan Z. McKown* and *Harry L. Cline,* of Gaffney, *for Appellant,*

*J. Allen Lambright, Esq., Solicitor,* of Spartanburg, *for Respondent,*

December 16, 1955.

T. B. GRENEKER, Acting Associate Justice.

The appellant Henry Lee Boone was tried before Honorable E. H. Henderson and a jury at the November, 1954 term of the General Sessions Court for Cherokee county and was convicted of murder, after a trial lasting two days. No mercy was recommended. From that conviction and sentence of death he now comes to this court. Motions were made for the direction of a verdict of not guilty and for a new trial, both of which were refused, and it is therefore necessary to review the evidence.

The exceptions as set out in the transcript of record are as follows:

1. The trial court erred in allowing the jury to consider the confession of Henry Lee Boone in that the uncontradicted testimony shows that a member of the interrogation team,

who was identified by the appellant, made promise of help in exchange for the so-called "confession."

2. That it was highly prejudicial for the Solicitor to cross examine the appellant relative to his relationship with white women.

The testimony reveals that the deceased, Mrs. Agnes Webb, was found on August 21, 1954 in the nighttime, lying in the Quarter Round road in Cherokee County, in a dying condition, with a deep cut extending from the left ear downward to an area under her chin, that the wound was "wide open" and probably one and one-half inches deep; a small wound on the left arm, a wound over each breast, and "a deep stab wound into the major vessels at the base of the heart". As a result of these wounds Mrs. Webb died while being transported to a hospital in Spartanburg County.

On September 2, 1954, twelve days after the death of Mrs. Webb, the appellant, a Negro, then 31 years of age, was arrested. Boone, who had completed the fourth grade and who had served in the United States Army, seems to have come to Cherokee County, after having lived at various places in North Carolina, and had been in the county for about six weeks prior to his arrest. During this time he had been cutting pulp wood for Wallace Feagin, a white man, and living in a room on the back porch of Feagin's house. The Feagin home was near the "Quarter Round Road" where the deceased was found lying in a pool of blood. Appellant admits that he went to the Webb home on Friday, prior to date of Mrs. Webb's death, and knew that her husband was going to Tennessee on a fishing trip that weekend, and would not be at home the following Saturday night.

After the arrest appellant was first taken to the Cherokee County jail, then to Columbia to the Headquarters of the South Carolina Law Enforcement Division. He was returned to Cherokee County and remained there until September 7th when he was taken to the penitentiary at Columbia, and on September 8th, it is admitted by the appellant

that he made a statement to Lieutenant Strom of the State Law Enforcement Division. Boone claimed that this statement was made because "that fellow in the lie tester, he told me if I would tell him the truth, he could help me. I just figured he could help me. I was scared and everything and I figured he could help me. I just admitted I did the crime". Boone, however, did not at any time contend or even intimate that Lieutenant Strom promised him anything or mistreated him in any way or did anything to induce him to make the statement.

Prior to the witness Strom being allowed to testify relative to the statement, he was directly examined by the Solicitor and cross-examined by defense counsel. At the end of this examination the trial judge held: "The testimony will be admitted in evidence. I make that ruling. It will be admitted. I leave it to the jury in the final analysis to pass upon it and all other facts in the case".

The substance of what Lieutenant Strom related that Boone freely and voluntarily told him is, that Boone, in the company of others, went to the home of Grover Webb on August 20th to get a chain saw sharpened. That on the way back he was told that Grover Webb said he was going to Tennessee on a fishing trip the next day. On Saturday, with others, he cut pulp wood until about noon and then came back to Feagin's house, then he, with others, went to a bootlegger's house and each got a pint of whiskey. He drank some of his whiskey and about 8:30 or 9:00 o'clock he had sexual intercourse with "Miss Virgie" and after that, he walked down the road, until he saw a woman coming down the road. Near an old house he got a piece of iron and then went back down the road to where the woman was walking and spoke to her; that she asked him what he was doing speaking to her, that she jumped on him and fought him; he hit her with the iron in the chest and did not know "how many other places", then threw the iron away and went back to Feagin's house.

Appellant alleges error on the part of the trial court in admitting this testimony contending that it was not voluntary but was induced by "that fellow in the lie tester". "That fellow" has not been otherwise identified. Appellant had the services of two energetic and able counsel. They most probably knew what their client was going to say as to his "confession" as his defense throughout was based on the theory that such statement or "confession" was not voluntary or true and in fact that he knew nothing of the murder nor was he in anyway connected with it. There was no reason for the State to anticipate this testimony. Had there been such a person as "that fellow" it was certainly known to the appellant before the trial. The statement related by the witness Strom was testified to have been made freely and voluntarily on September 8th, the trial was held more than two months thereafter and there is nothing in the record to indicate that any steps were taken to bring "that fellow", if any such person existed, as a witness. Upon cross examination of appellant an effort was made to have him identify or tell who "that fellow" was. The question of a confession being voluntary and free is one which is first addressed to the trial judge, and if an issue of fact arises relative thereto, it would be admitted and the jury, under proper instructions, allowed to make the ultimate finding as to its voluntary character and as to its truthfulness, the jury being the final arbiter of such facts. *State v. Livingston,* 223 S. C. 1, 73 S. E. (2d) 850, and many other decisions cited therein. The court below followed this approved procedure. It is noticed that the appellant at no time complained that he was mistreated or threatened or made to do anything by force or fear and under examination by his own counsel he was asked:

"Q. Did they mistreat you in any way? A. No, sir."

And on cross examination:

"Q. Let me ask you one thing, did the officers beat you while they had you? A. No, sir.

"Q. They gave you some clothes, they fed you, gave you cigarettes, and treated you all right, didn't they? A. Yes, sir."

Counsel for appellant argue that since their client testified that his statement to Lieutenant Strom was induced by a promise of aid by "that fellow", this makes the statement inadmissible for the reason that it was not thereafter denied by the person who is alleged to have offered the aid. It must be remembered that the State witness had already testified as to the statement having been made freely and voluntarily. This made an issue of fact for the jury. In support of this position they cite 22 C. J. S., Criminal Law, § 837, pp. 1467 and 1468. We do not think this authority affords appellant any aid. It is also stated in printed argument that "there appear to be no decided cases in this State upon the exact factual situation here". However, an independent examination of our own authorities reveals the very interesting case of *State v. McAlister,* 1924, 133 S. C. 99, 130 S. E. 511, 512 in which it seems that a strikingly similar factual situation arose. In that case the Magistrate testified directly to the point that no inducements were held out, no threats made, and no reward offered, and that the alleged confession was free and voluntary. The defendant adduced evidence that he was turned over to a Mr. Hammond, the regular constable of the Magistrate and a Mr. Cole, then a candidate for Sheriff of Florence County; that he was taken into a back room of a building in which the Magistrate's office was located and there, behind closed dors, was subjected to physical violence, and threatened with death unless he admitted his guilt; and, after all of this he was taken back before the Magistrate and made the incriminating statements. Counsel there, as here, argued "since his client's testimony as to coercion which was applied by Hammond, out of the immediate presence of the Magistrate, was not controverted by Hammond, who was present at the trial and did not go on the stand, the only reasonable inference of fact from all the evidence is that the confession to which

the Magistrate testified was obtained by intimidation and was involuntary".

The court speaking through the late Justice Marion, said:

"That contention cannot be sustained. Under the well-settled rule in this state, whether the alleged confession was voluntary or involuntary was for the determination of the trial judge in the first instance; ultimately it was for the jury as the final arbiters of the facts. * * * In passing on the preliminary question of admissibility, the trial judge was not bound to accept as true the defendant's testimony as to intimidation, even if such testimony were not directly controverted by the testimony of other witnesses. But in this case the testimony of the magistrate clearly tended to controvert the defendant's contention of fact that the incriminating statements in question were procured by duress. There was thus a conflict of testimony, and in no view can it be held as a matter of law that the only inference to be drawn from the evidence is that the alleged confession was involuntary."

As to appellant's second exception, set out above, the record reveals that this relationship, if we may so designate it, was testified to by the witness Strom in relating the statement made to him by appellant. Then on direct examination by his counsel, we find in appellant's testimony this:

"Q. Did you drink all of that liquor? A. Yes, sir.

"Q. When did you finish drinking all of it? A. About seven o'clock that night or 7:30.

"Q. Did you go any place after 7 o'clock? A. No, sir.

"Q. Did you just stay there at Mr. Wallace Feagin's house? A. After I drank my liquor and went to bed.

"Q. About what time did you go to bed? A. I would say about 9 or 9:30, after I had a date with one of those girls there at the house."

On cross examination by the Solicitor we find:

"Q. That household consisted of how many? A. Four women and four men.

"Q. Four women and four men. The four men being Mr. Feagen, Clyde, you and the little boy? A. Yes, sir.

"Q. And the four women were Miss Lillian, Mr. Feagin's wife, Miss Virgie and the little sixteen year old girl. A. Yes, sir.

"Q. And then you say you went to bed with one of those women? A. Yes, sir.

"Q. You had intercourse with her? A. That's right."

We may also add that this testimony corroborates in part the testimony as given by Lieutenant Strom and could have been considered, along with all other bits of evidence as to whether or not the confession was true, and any reasonable inferences to be drawn therefrom were for the jury. It would be most difficult for any witness to have knowledge of such testimony except it be furnished by one who actually knew it. Appellant seemed entirely willing to testify as to this sordid relationship and when he is cross-examined, he should not complain.

Appellant moved for the direction of a verdict of not guilty as well as for a new trial, both of which were refused. We have repeatedly held that if there be any evidence tending to prove the fact in issue or which reasonably conduces to its conclusion as a fairly logical and legitimate deduction, and not merely a suspicion or conjecture in regard to it, the case should be submitted to the jury. In passing upon a motion for a directed verdict, the function of the court is not to pass upon the weight of the evidence, but is to determine its sufficiency to support the verdict. *State v. Roddey,* 126 S. C. 499, 120 S. E. 359; *State v. Brown,* 205 S. C. 514, 520, 32 S. E. (2d) 825; *State v. Goodson,* 225 S. C. 418, 82 S. E. (2d) 804 and *State v. Riley,* 219 S. C. 112, 64 S. E. (2d) 127.

We find no possible grounds on which a directed verdict could have been directed and no reason why a new trial should have been granted.

We think what has been said disposes of all questions raised, but in keeping with our invariable rule of *in favorem vitae, State v. Taylor,* 213 S. C. 330, 49 S. E. (2d) 289, 16 A. L. R. (2d) 1317, we have considered all the original exceptions, whether or not orally argued, and have combed the record for prejudicial error, disregarding whether or not it may have been made the basis of exception or question.

The officers on Sunday, following the homicide on Saturday night, during their investigation found blood near the pear tree, and when the appellant was taken to the scene, many days thereafter and after the blood spots had disappeared into the soil, more than one witness testified that he pointed out where he got the iron, where he was when he saw the deceased walking down the road, and where he assailed her. The place of attack, he said, was near the pear tree. And this was the same point at which the officers discovered the blood spots. Here began a blood-sprinkled trail extending 592 feet down the road, in the direction of Mrs. Webb's home, to the point where her body was found.

While not attempting to make this court finders of fact, we have reviewed the testimony throughout, keeping in mind that every bit of the record, especially in cases of this nature, should be most thoroughly and minutely scrutinized. Such study of the record reveals that in many instances the incriminating statements of appellants were corroborated by evidence upon which, in our judgment, no honest or reasonable jury could have brought in any other verdict without doing violence to their oath.

We think the record affords solid ground and abundant evidence to warrant the jury in returning its verdict of guilt. The appellant had a fair trial before an experienced and able judge, and we find no prejudicial error, and with the rulings of the court below on all questions raised we find no difficulty in agreeing. All exceptions are overruled and the judgment below is affirmed.

Appellants' counsel, appointed by the court, have been faithful and zealous in the performance of their duties in conformity with the highest traditions of their profession, and have, at their personal expense, furnished printed briefs and appeared in oral argument. They are to be commended and thanked for their services.

STUKES, TAYLOR, OXNER and LEGGE, JJ., concur.