# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Petitioner,

v.

Brittany Johnson, Respondent.

Appellate Case No. 2013-002027

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal From Richland County
Edward B. Cottingham, Circuit Court Judge

---

Opinion No. 27565
Heard March 4, 2015 – Filed August 19, 2015

---

## REVERSED

---

Attorney General Alan McCrory Wilson, Chief Deputy
Attorney General John W. McIntosh, Senior Assistant
Deputy Attorney General Donald J. Zelenka, Assistant
Attorney General Brendon Jackson McDonald, all of
Columbia, and Solicitor Jimmy A. Richardson II, of
Conway, for Petitioner.

Appellate Defender Benjamin John Tripp, of Columbia,
for Respondent.

---

**CHIEF JUSTICE TOAL:**     The State appeals the court of appeals' decision reversing Respondent Brittany Johnson's conviction for murder and remanding the case for a new trial.  We reverse the decision of the court of appeals.

FACTUAL/PROCEDURAL HISTORY

On July 2, 2008, Brittany Johnson was arrested in Darlington County by United States Marshals for the shooting death of Monica Burroughs (the victim), which occurred on June 24, 2008, in Horry County.[1]  Following her apprehension and initial incarceration in the Darlington County Detention Center, Johnson was transferred to the Conway Police Department in Horry County.

At trial, the State sought to introduce a videotaped recording of the police's interrogation of Respondent after she was arrested, and the court held a *Jackson v. Denno*[2] hearing to assess the voluntariness of the statement.

At the hearing, the State called Officer John King, who testified he and another officer interviewed Respondent at the Conway Police Department after she was arrested.  King testified that the interview lasted approximately thirty minutes, and the videotape represented the extent of his interaction with Respondent.  King testified that Respondent did not appear to be under the influence of alcohol or drugs when she gave her statement or to suffer from any mental or physical condition that would impair her ability to understand the questions; did not request a break from questioning, either to use the restroom or make a telephone call; and did not request anything to eat or drink.  Further, King testified that he neither threatened Respondent, nor made any promises to her during the interrogation.

King explained that he orally advised Respondent of her rights pursuant to

---

[1] Respondent, then seventeen years old, attacked the unarmed victim while the victim was seated in a friend's vehicle, "pistol-whipped" her, and ultimately shot her.  Two witnesses confirmed the events of the shooting.  In her statement to police, Respondent described a series of confrontations with the victim in the lead-up to the shooting.

[2] 378 U.S. 368 (1964).

*Miranda v. Arizona*,[3] and provided Respondent with an advisement of rights form that also listed the *Miranda* warnings.  Specifically, King testified that he advised Respondent: (1) that she had a right to remain silent; (2) that anything she said could be used against her in court; (3) that she had a right to an attorney; (4) that if she could not afford an attorney, one would be provided for her prior to any questioning; and (5) that if she decided to make a statement, she had the right to stop speaking to police at any time.  King testified that Respondent waived her rights orally and also by initialing and signing the form provided to her.

King further testified that he specifically asked Respondent if she desired to have an attorney present during the questioning, and Respondent replied, "no," and otherwise did not invoke her right to counsel during the interview.

Defense counsel called Respondent to testify.  Contrary to King's testimony, Respondent testified that she was neither advised of her rights when she was arrested in Darlington County, nor when she was "booked" into jail at the Darlington County Detention Center, where she waited to be transferred to Horry County.  However, Respondent testified that she repeatedly asked for an attorney:

Q.    At any point did you ask for an attorney?

A.    Yes, sir . . . . [T]he first time I asked for an attorney was . . . while I was being signed over by whoever [sic] that Marshal was . . . . that signed my paperwork.

Q.    And who did you ask, the Marshal or the people who were waiting to get you?

A.    The Marshal because at the time I was in, like, a partition where it's locked on both sides while he did my fingerprints and . . . . signed some paperwork to hand me back over to them.[4]

---

[3] 384 U.S. 436 (1966).

[4] Respondent could not recall any identifying features or names of the arresting officers or the two officers who transferred her to Horry County.

Q. Okay. And when you asked this . . . gentleman, what specifically did you say regarding an attorney as best you can recall?

A. I just asked him was I going to need an attorney.

Q. Okay. You asked if you were going to need an attorney?

A. Uh-huh.

Q. Okay. And what did the Marshal say?

A. He was pretty sure I would.

Q. Okay. And after that did you ever ask anyone regarding receiving legal assistance?

A. Yes, sir.

Q. Okay. And tell the Court about that. When and what were the circumstances under which you made that request?

A. When we got back to Conway, upon entering the . . . police department . . . , I thought . . . I would just be, like, booked in and then put in jail but when I got there and they opened up the door to the interview room and when I went in there, I realized what was going on, and I said, "I need an attorney for this, don't I?"

Q. Uh-huh.

A. And I said, "I need an attorney for this."

Q. All right.

A.    And their response was, "The Judge will . . . take care of that. When you get downtown, he issues a warrant."

Q.    Uh-huh.

A.    And that was the end of that.

Q.    So, you said, "I need an attorney for this."

. . . .

Q.    And once you received that response, once you requested an attorney and were told that the Judge would take care of it later, did you believe you had the right at that point to not answer any questions?

A.    I was under the impression that it was okay. It was okay to talk.

During cross-examination, the State sought to discredit Respondent's testimony by eliciting testimony that she was experienced with the criminal justice system and had been represented by counsel in the past in the juvenile justice system.   In addition, Respondent acknowledged that despite understanding her rights, she wished to waive them at that time, and further confirmed the recorded statement displayed her telling officers that she wished to waive her rights.

Based on this testimony, the trial court determined "beyond a reasonable doubt . . . that the confession or statement obtained by the defendant was freely and voluntarily given and that the same was given without duress, without coercion and without undue influence and without any threats, inducements or hope of reward." Moreover, the trial court found that Respondent,

in compliance with *Miranda v. Arizona*[,] was advised of her constitutional rights; that is, the right to have an attorney present with her during the interview and the interrogation; that the Court would appoint an attorney for her if she was without funds to employ one without cost to her; that she had the right to remain silent; that she had the right to terminate after the interrogation at any time and not to

answer any questions and that anything the defendant said could be used against her as evidenced in this case.

Finally, the trial court found that Respondent "knowingly[] understood these rights and intelligently waived such rights under the Fifth Amendment to remain silent and to have counsel present with her at the interview and interrogation," that "the decision to make the statement was a product of the defendant's own unfettered will," and that Respondent "had the capacity to comprehend the meaning and effects of waiving her constitutional rights." Therefore, the trial court found that the statement, if offered during trial, would be admitted into evidence.

Defense counsel objected to the ruling, explaining that it was "uncontradicted" that Respondent specifically said "I need an attorney for this" to a member of law enforcement, and therefore, the interviewing officers had no legal right to question Respondent "unless and until [Respondent] indicate[d] that [she] wish[ed] to speak." Consequently, defense counsel argued that the statement should not be admitted into evidence because Respondent invoked her right to counsel. On the other hand, the State argued that there was no evidence—other than Respondent's own testimony—that Respondent invoked her right to counsel, emphasizing Respondent's subsequent waiver of her rights and the videotaped interview in which she never invoked her right to counsel.

The trial court concluded that Respondent's testimony regarding her invocation of her right to counsel was "simply not plausible in that with Officer King she had ample opportunity to express her desire for . . . an attorney . . . , indicated not only on Mr. King's testimony but on the video itself," and therefore, his ruling regarding the voluntariness of Respondent's statement would remain in effect.

The State subsequently introduced Respondent's videotaped statement at trial over defense counsel's objection.[5] In her recorded statement, Respondent admitted she hit the victim with a gun before shooting her. The jury ultimately found Respondent guilty of murder, and the trial court sentenced her to thirty years' imprisonment.

---

[5] The testimony surrounding the voluntariness of Respondent's statement that the jury heard was similar to the testimony adduced at the *Jackson v. Denno* hearing.

Respondent appealed to the court of appeals. On appeal, she argued, *inter alia*, that the trial court erred in admitting her statement to police into evidence after she invoked her right to counsel. Specifically, Respondent, citing *Edwards v. Arizona*, 451 U.S. 477 (1981), argued that because she allegedly invoked her right to counsel while in custody, the trial court—despite finding her testimony "not plausible"—erred in finding she knowingly, freely and voluntarily, waived her *Miranda* rights as required in a pretrial *Jackson v. Denno* hearing.

Without discussion, the court of appeals reversed and remanded Respondent's conviction, finding the trial court erred in admitting Respondent's statement to police. *See State v. Johnson*, No. 2013-UP-288 (S.C. Ct. App. June 26, 2013) (citing *State v. Wannamaker*, 346 S.C. 495, 499, 552 S.E.2d 284, 286 (2001) ("If a suspect invokes her right to counsel, police interrogation must cease unless the suspect herself initiates further communication with police."); *State v. Franklin*, 299 S.C. 133, 137, 382 S.E.2d 911, 913 (1989) (noting the State has the burden to prove a defendant validly waived his *Miranda* rights); *State v. Middleton*, 288 S.C. 21, 25, 339 S.E.2d 692, 694 (1986) (noting the trial court must make an affirmative finding that there was no violation of *Miranda* during a *Jackson v. Denno* hearing before admitting a statement into evidence).

On appeal, the State asserts that the court of appeals (1) applied an incorrect appellate standard of review in assessing the trial judge's factual findings, (2) erred in reversing the trial court's ruling where Respondent was not being interrogated when she inquired about counsel and did not unequivocally invoke her right to counsel, and (3) failed to consider if Respondent was prejudiced by the admission of the evidence.

## STANDARD OF REVIEW

In criminal cases, the appellate court sits to review errors of law only. *State v. Baccus*, 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006). The admission or exclusion of evidence rests in the sound discretion of the trial judge, and will not be reversed on appeal absent an abuse of discretion. *State v. Gaster*, 349 S.C. 545, 557, 564 S.E.2d 87, 93 (2002) (citation omitted); *see also State v. Kelly*, 319 S.C. 173, 176, 460 S.E.2d 368, 370 (1995) ("A trial judge has considerable latitude in ruling on the admissibility of evidence and his rulings will not be disturbed absent a showing of probable prejudice." (citation omitted)). "An abuse of discretion occurs when the trial court's ruling is based on an error of law or, when grounded

in factual conclusions, is without evidentiary support." *State v. Jennings*, 394 S.C. 473, 477–78, 716 S.E.2d 91, 93 (2011) (quoting *Clark v. Cantrell*, 339 S.C. 369, 389, 529 S.E.2d 528, 539 (2000)).

## LAW/ANALYSIS

With respect to the dispositive issue on appeal, the State asks this Court to reverse the decision of the court of appeals because the trial court, as the preliminary fact-finder in a pre-trial evidentiary hearing, determined that Respondent's testimony was not credible, and the court of appeals was required under the applicable standard of review to accept this finding unless unsupported by the evidence. On the other hand, Respondent argues the trial court abused its discretion by employing a rule that responding to police questioning without an attorney precludes the possibility that a defendant requested an attorney before the questioning.

When analyzing a criminal defendant's invocation of her right to counsel, a trial court must make two separate inquiries:

> First, courts must determine whether the accused actually invoked his right to counsel. *See, e.g.*, *Edwards v. Arizona*, 451 U.S., at 484–85 (whether accused "expressed his desire" for, or "clearly asserted" his right to, the assistance of counsel); *Miranda v. Arizona*, 384 U.S. at 444–45 (whether accused "indicate[d] in any manner and at any stage of the process that he wish[ed] to consult with an attorney before speaking"). Second, if the accused invoked his right to counsel, courts may admit his responses to further questioning only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked. *Edwards v. Arizona*, 451 U.S. at 485, 486, n.9.

*Smith v. Illinois*, 469 U.S. 91, 95 (1984) (per curiam).

Because the trial court found Respondent's testimony that she actually invoked her right to counsel was "simply not plausible"—or lacked credibility— Petitioner cannot satisfy the first prong of the inquiry.[6]

---

[6] If an accused invokes her right to counsel, she may only be questioned thereafter

Credibility findings are treated as factual findings, and therefore, the appellate inquiry is limited to reviewing whether the trial court's factual findings are supported by any evidence in the record. *See, e.g.*, *State v. Banda*, 371 S.C. 245, 251, 639 S.E.2d 36, 39 (2006) (stating that in preliminary evidentiary matters, appellate court review is limited to reviewing whether the trial court's factual findings are supported by any evidence in the record). Moreover, it is well-established under South Carolina law that credibility determinations are entitled to great deference. *See, e.g.*, *State v. Cutro*, 332 S.C. 100, 117, 504 S.E.2d 324, 333 (1998) (Toal, J., dissenting) ("On appeal, [the appellate court is] to ascertain whether the trial court abused its discretion in admitting the evidence. Our task is not to engage in a de novo review of the evidence. Nor are we to usurp the authority of the trial court by attempting to judge the credibility of witnesses. The determination of credibility must be left to the trial judge who saw and heard the witnesses and is therefore in a better position to evaluate their veracity." (citations omitted)); *Sumpter v. State*, 312 S.C. 221, 224, 439 S.E.2d 842, 844 (1994) ("Because the trial court's findings . . . rest largely on his evaluation of demeanor and credibility, those findings are given great deference.").

Here, the trial court's finding that Respondent lacked credibility is supported by the record. Not only did the trial court find that Respondent's testimony was not credible in assessing Respondent's actual demeanor on the witness stand, we note that Respondent could not recall with much specificity where or to whom she invoked her right to counsel, and fumbled in her responses as to whether her request was unequivocal. *Cf. State v. Stephenson*, 878 S.W.2d 530, 547 (Tenn. 1994) (finding the trial court did not err when it found defendant's testimony that he requested counsel was not credible); *Thomas v. State*, 738 S.E.2d 571, 574 (Ga. 2013) (affirming the trial court's ruling that testimony by the accused during a *Jackson v. Denno* hearing that he invoked his right to counsel both before and during his interview was not credible). Further, there is no requirement under the law that the trial court must believe a criminal defendant's version of events. *See*

in the presence of counsel, and her responses to further questioning outside the presence of counsel are admissible only if she initiates further questioning and then knowingly and intelligently waives her previously invoked right to counsel. *See, e.g.*, *Smith v. Illinois*, 469 U.S. at 94–99. Here, the State admits that if the Court found Respondent clearly and unequivocally invoked her right to counsel, then the subsequent statement to police would have been inadmissible.

*State v. Boone*, 228 S.C. 438, 444, 90 S.E.2d 640, 643 (1955), *overruled on other grounds by State v. Torrence*, 305 S.C. 45, 406 S.E.2d 315 (1991) (stating that when deciding preliminary questions of admissibility, the trial court is "not bound to accept as true the defendant's testimony" (citation omitted)); *Black v. Hodge*, 306 S.C. 196, 198, 410 S.E.2d 595, 596 (Ct. App. 1991) ("The fact that testimony is not contradicted directly does not render it undisputed." (citation omitted)). The practical effect of the trial court's finding that Respondent lacked credibility is that no invocation (either equivocal or unequivocal) occurred, as there was no other evidence that Respondent invoked her right to counsel prior to giving her statement.

Because the effect of the credibility finding is that Respondent did not unequivocally invoke her right to counsel, we further uphold the trial court's finding that Respondent's statement was voluntary. *See Berghuis v. Thompkins*, 560 U.S. 370, 382 (2010) ("Even absent the accused's invocation of the right to remain silent, the accused's statement during a custodial interrogation is inadmissible at trial unless the prosecution can establish that the accused 'in fact knowingly and voluntarily waived [*Miranda*] rights' when making the statement.") (quoting *North Carolina v. Butler*, 441 U.S. 369, 373 (1979))).[7]

## CONCLUSION

For the foregoing reasons, the decision of the court of appeals is

**REVERSED**.

**PLEICONES, BEATTY, KITTREDGE and HEARN, JJ., concur.**

---

[7] We need not reach the issues of whether Respondent was subjected to custodial interrogation when she allegedly invoked her right to counsel and whether Respondent was prejudiced by the trial court's admission of the videotape at trial because the credibility issue is dispositive. *See Futch v. McAllister Towing of Georgetown, Inc.*, 355 S.C. 598, 578 S.E.2d 591 (1999).