SHORT, J.:
Antwan Jett appeals his convictions and sentences for burglary first degree, armed robbery, criminal conspiracy, and possession of a weapon during a crime of violence, arguing the trial court erred in admitting his recorded statement because it was obtained in violation of his Miranda[1] rights. We affirm.
FACTS
At approximately 3:30 a.m. on December 31, 2013, Michael Barr was awoken by a knock at his door. When he asked who was there, a person replied saying it was BJ, who was a friend of Barr's. When Barr opened the door, three males with their faces covered entered through the door and began assaulting him while demanding money. One male in a green hoodie had "a small Derringer," which he pointed at Barr. Another male grabbed Barr's hunting knife from the floor. The male in a green hoodie and a third male went upstairs and entered Barr's bedroom, *636 as well as Barr's female roommate's bedroom. Barr's roommate began screaming, and the three males ran out the back door.
Officer William Blackmon responded to the scene and saw two males running away from Barr's house, one of whom was wearing a green hoodie. Officer Blackmon chased the suspects, but he was unable to apprehend them. While retracing the path of the chase, he found a hunting knife on the ground.
Officer Thomas Herman arrived at the scene and observed two males running from Barr's house with Officer Blackmon in pursuit. He testified one of the males was wearing "a green or a gray hoodie." Officer Herman followed the path of the chase and found "a small caliber handgun, a small revolver style Derringer."
Corporal Legrande Gowdy and Officer Lacey Allen both responded to the scene and began walking through the area. Officers Gowdy and Allen found a green hoodie, a gray pullover, pill bottles, and two masks that "matched the description of the one the suspect was wearing." While searching with her flashlight, Officer Allen observed someone lying underneath a vehicle that was about half a block from Barr's house. Officer Allen shouted "he's under the car, he's under the car" and drew her weapon while ordering the individual to get out from underneath the vehicle. The individual began to move from under the car but hesitated after Corporal Gowdy appeared. Corporal Gowdy instructed the individual to get out from under the car, and when the individual instead began backing up, Corporal Gowdy tased, detained, and handcuffed him. Corporal Gowdy testified the individual was wearing gloves and a t-shirt, and the temperature was in the low 30s, "which would not make sense to have gloves on and no coat and no nothing or anything." Corporal Gowdy asked him about the clothing they found, and the individual said it did not belong to him. The individual told Corporal Gowdy he had been out drinking and was tired, so he crawled up under the car to go to sleep.[2] As Corporal Gowdy read the individual his Miranda rights, the individual said "I don't know anything about a gun." Gowdy then placed the individual into a patrol vehicle and called an investigator to question him. The individual was later identified as Jett.
Detective Felicia Jones met with Jett while he was detained in the patrol vehicle. Upon introducing herself as a police officer, Jett immediately said, "Where my lawyer at?" Detective Jones said, "I'm going to read you your rights, okay." Jett continued, "I already read my rights three times. I don't know why they reading me rights for." Detective Jones then read Jett his Miranda rights and asked Jett if he wanted to talk to her. Jett responded, "About what? About me being intoxicated?
Finding me under a car? Man tase me, put a knee back of my head. What did I do? What did I do?" When Detective Jones asked Jett why he told the officer he did not have anything to do with a gun, Jett responded, "What gun?" She asked him why he was under the car, and Jett said he had been drinking and wanted to go to sleep, so he laid down. He said he did not know he was under a car. When Detective Jones asked Jett where he lived, he recited his address and said, "Anything else, ask my lawyer." Detective Jones then asked Jett if he did not want to talk to her anymore. Jett responded, "What happened?" and continued to say he did not know why he was tased. Detective Jones did not ask Jett any more questions.
In a pretrial motion following a Jackson v. Denno[3] hearing, Jett made a motion to suppress his statement to Detective Jones as the statement was taken in violation of his Miranda rights. Jett argued his statement-Where my lawyer at?-was unambiguous, and he affirmatively asserted his right to an attorney. The State contended Jett's statement to Detective Jones was admissible because it was ambiguous. The trial court denied the motion, finding the statement to Detective Jones was ambiguous and thus, the questioning was not in violation of Jett's Miranda rights. This appeal followed.
STANDARD OF REVIEW
"In criminal cases, the appellate court sits to review errors of law only."
*637 State v. Banda , 371 S.C. 245, 251, 639 S.E.2d 36, 39 (2006). Thus, "an appellate court is bound by the trial court's factual findings unless they are clearly erroneous." Id. "The same standard of review applies to preliminary factual findings in determining the admissibility of certain evidence in criminal cases." Id. "The appellate courts are 'bound by fact findings in response to motions preliminary to trial when the findings are supported by the evidence and not clearly wrong or controlled by error of law.' " State v. Miller , 375 S.C. 370, 378, 652 S.E.2d 444, 448 (Ct. App. 2007) (quoting State v. Amerson , 311 S.C. 316, 320, 428 S.E.2d 871, 873 (1993) ).
LAW/ANALYSIS
Jett maintains the trial court erred in admitting the recorded statement to Detective Jones. He asserts the questioning was in violation of his Miranda rights because he unambiguously asked for his lawyer twice during the interview and Detective Jones continued to question him. We disagree.
"When analyzing a criminal defendant's invocation of his or her right to counsel, a trial court must make two separate inquiries." State v. Johnson , 413 S.C. 458, 466, 776 S.E.2d 367, 371 (2015). "First, courts must determine whether the accused actually invoked his right to counsel." Id. "Second, if the accused invoked his right to counsel, courts may admit his responses to further questioning only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked." Id. "If the suspect effectively waives his right to counsel after receiving the Miranda warnings, law enforcement officers are free to question him." Davis v. United States , 512 U.S. 452, 458, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994). "But if a suspect requests counsel at any time during the interview, he is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates conversation." Id. "Invocation of the Miranda right to counsel requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." Id. at 459, 114 S.Ct. 2350.
In Davis , the United States Supreme Court held a suspect must unambiguously request counsel. "[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, our precedents do not require the cessation of questioning." Id. "[A] statement either is such an assertion of the right to counsel or it is not." Id. (quoting Smith v. Illinois , 469 U.S. 91, 97-98, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984) (brackets omitted)). The Davis court found Davis' statement to the investigator, "Maybe I should talk to a lawyer," was not a request for counsel and the investigator was not required to stop questioning Davis. Id. at 462, 114 S.Ct. 2350.
Here, Jett merely made the vague statement-Where my lawyer at?-and did not expand upon the statement before continuing to talk to the police. We find Jett's statement to Detective Jones, prior to her reading Jett his Miranda rights, was ambiguous and equivocal enough so that a reasonable officer could have decided it was not an invocation of counsel.[4] It was not necessary for Detective Jones to make any further inquiries and ask Jett to clarify his statement. Therefore, because Jett's Miranda rights were not violated, the trial court did not err in admitting Jett's statement to Detective Jones.
CONCLUSION
Accordingly, the decision of the trial court is
AFFIRMED.
GEATHERS, J., concurs.

Miranda v. Arizona , 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Corporal Gowdy noted in his report that he did not smell any alcohol on the individual.

378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

After reviewing the audiotape, we find it is hard to understand Jett's comments to the officer, and at the least, they were ambiguous and equivocal.