**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Appellant,

v.

Anijah Yarnell, Respondent.

Appellate Case No. 2023-000571

---

Appeal From Horry County
J. Mark Hayes, II, Circuit Court Judge

---

Unpublished Opinion No. 2026-UP-276
Submitted April 22, 2025 – Filed June 3, 2026

---

**AFFIRMED**

---

Attorney General Alan McCrory Wilson, Deputy Attorney General Donald J. Zelenka, Senior Assistant Deputy Attorney General Melody Jane Brown, all of Columbia; and Solicitor Jimmy A. Richardson, II, of Conway, all for Appellant.

Chief Appellate Defender Wanda H. Carter, of Columbia, for Respondent.

---

**PER CURIAM:** The State appeals the circuit court's order granting Anijah Yarnell immunity from prosecution under the Protections of Persons and Property

Act (the Act).  *See* S.C. Code Ann. §§ 16-11-410 to -450 (2015).  The State argues the circuit court abused its discretion by (1) finding Yarnell was without fault in bringing on the difficulty; (2) finding Yarnell was in actual danger of death or great bodily injury; (3) ruling that Yarnell was entitled to the presumption of reasonable fear because one of the decedent's fingerprints was found on Yarnell's car; and (4) finding subsection 16-11-440(B) of the Act did not apply when Yarnell was engaged in an unlawful activity and that he was in a place he had the right to be under subsection 16-11-440(C).  We affirm.[1]

**FACTS**

In May 2020, Yarnell was in a romantic relationship with Remington Hargrove (Remi).  On May 14, 2020, Remi's family was visiting Myrtle Beach from New York, and the group had plans to go out for dinner together after Yarnell got off work.  When the plans changed, Yarnell got upset and the couple engaged in a heated argument through text messaging.  When Remi told Yarnell she would not be coming home that night, he demanded that she come home and threatened to destroy four photographs of her deceased father every thirty minutes she did not return home.  Between around 2:30 p.m. and 9:00 p.m. that day, Yarnell called Remi over 200 times, sometimes from a blocked number.  After the first few calls, Remi stopped answering and turned off her phone for most of the afternoon and evening.  Around 5:45 that afternoon, Yarnell also began sending text messages to Remi's mother, Michelle, threatening to throw away Remi's belongings if she did not come home and collect them because Remi told him she was going to move in with one of her friends.

Later that night, Yarnell drove to the condo where he knew Remi and her family were headed after dinner.  When Remi and her cousin, Emily Cerio, drove into the complex, Remi saw Yarnell's car, and she and Cerio got back in their car and left the complex.  Remi and Cerio drove to a gas station.  While there, Remi spoke to Yarnell on the phone and asked him to drop off her things and leave.  Cerio and Remi met Cerio's boyfriend, Michael Pennington, at the gas station and asked him to come to the apartment complex because Remi was afraid of Yarnell.

When Remi and Cerio returned to the apartment complex parking lot, they passed by Yarnell as he was driving out of the complex.  Remi and Cerio continued toward the building, parked the car, and went upstairs to the apartment.

---

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.

Pennington was already standing in the parking lot talking to Remi's aunt, Jennifer Tassone, and her boyfriend, Darrin Card, when Cerio and Remi returned.

In the meantime, Yarnell turned around and pulled back into the parking lot. He drove up close to where Pennington was standing. The record contains conflicting testimony as to what exactly happened next, but ultimately, Yarnell produced a handgun, shot Pennington through his partially-lowered window, and drove away.[2] Pennington died as a result.

An Horry County Grand Jury indicted Yarnell for murder and possession of a weapon during the commission of a violent crime. Yarnell claimed he shot Pennington in self-defense and thus sought immunity from prosecution under the Act. The circuit court held an immunity hearing. During the hearing, in addition to his own testimony, Yarnell presented the testimony of eleven witnesses, including Card, Cerio, and Melissa Cannon, who was on the phone with Yarnell during his confrontation with Pennington.[3] Following the hearing, the circuit court granted Yarnell's motion for immunity.

Yarnell testified he went to the apartment complex that night for the sole purpose of dropping off Remi's clothes and belongings to her. He stated he also wanted to talk to her but he did not want to hurt her. Yarnell explained that he always kept his gun in his center console and that it was already there, loaded with a round in the chamber, when he left his home to drive to the apartment complex. He stated he liked to go to the shooting range from time to time and had been there recently prior to the altercation.

Yarnell testified that when he spoke to Remi shortly before she arrived at the apartment complex, she told him to "drop her stuff off then leave" and he interpreted that to mean to "wait until she got there to give her her stuff and then leave." He explained he got tired of waiting and had decided to leave but then Remi passed him on her way into the parking lot and he turned around to "finally drop her stuff off to her." Yarnell recalled that when he came back into the parking lot, he saw Card, Pennington, and Cerio standing together. He stated he lowered his window and asked, "[I]s Remi going to get her stuff or not?" Yarnell explained that Pennington, who was the only person to respond, reacted by screaming at him

---

[2] The bullet traveled through the window glass.

[3] Cannon was friends with Michelle. Michelle had undergone a medical procedure that day, was disoriented from medication related to the procedure, and was staying with Cannon in Columbia the night of the shooting.

and telling him to "get the f*** out of the car, get the f*** out of the car so I can f*** you up." Yarnell testified that when Pennington first approached his car, he locked his doors. He recalled Pennington's demeanor was "belligerent" and "aggressive."

Yarnell stated Pennington, who was about the same size as him, "lifted his shirt up at a point in time and started wrapping something around his hand, [but] it was dark so [Yarnell] did[ no]t see what it was." He testified Pennington approached his vehicle and "was forcefully trying to get in [the] vehicle" by pulling on the door handle. He stated the only way for him to get out of the parking lot was by backing out. Yarnell stated he tried to back up and leave but Pennington was moving along with his car and punched him through the lowered window and was trying to force his way inside. Yarnell testified Pennington was unable to land good punches because he was punching through the window and Yarnell had his hand up. He stated that as Pennington was punching him through the window, Yarnell reached into the center console for his gun and Pennington saw that he had a gun. Yarnell stated Pennington said "if you pull it out you better use it" and reached for the gun. Yarnell testified he fired one shot in Pennington's general direction out of fear for his life. Yarnell clarified that he "had no clue if [Pennington] had a weapon in his pocket" and "did[ no]t know what his intentions were." He explained that he was afraid Pennington was going to take his gun from him and hurt or kill him with it. Yarnell acknowledged he did not see Pennington with a gun or knife in his hands but stated he could not fully see whether he had any weapon and did not know what Pennington might have had in his pockets.

The circuit court found Yarnell "was a credible witness." The circuit court further found that Yarnell proved by a preponderance of the evidence that he shot Pennington in self-defense. It determined that before Yarnell fired the shot, "Pennington reached into the vehicle to strike [Yarnell] and to attempt to grab the gun." The circuit court noted the driver's side window was partially down during the altercation, and although it could not be determined exactly how far the window had been lowered, it was low enough that Pennington was able to reach inside the car to attempt to punch Yarnell and grab the gun. The circuit court found Pennington grabbed the door handle during the altercation. It held "the greater weight of the evidence establish[ed] that Pennington was attempting to open the vehicle's door in order to reach [Yarnell]" and that Yarnell "did not present the gun into the altercation until after Pennington had approached the vehicle, [using] threatening words such as 'get out of the car and I will f*** you up' . . . . before and after he . . . reach[ed] into the vehicle."

The circuit court found that Yarnell did not provoke Pennington's attack and was not at fault in bringing on the attack; that Yarnell believed he was in imminent danger of losing his life or sustaining serious bodily injury and was actually in such danger; and that his fear and belief of imminent danger was real and reasonable. The circuit court further concluded that under section 16-11-440(A), Yarnell was entitled to a presumption of reasonable fear of imminent peril of death or great bodily injury when he used deadly force because Pennington was in the process of unlawfully and forcefully entering Yarnell's occupied vehicle and had attempted to remove Yarnell from the car. The circuit court concluded section 16-11-440(B)(1) did not disqualify Yarnell from immunity because Pennington did not have a right to occupy Yarnell's vehicle.

The circuit court additionally held Yarnell was not engaged in an unlawful activity or using his vehicle to further an unlawful activity under section 16-11-440(B)(3). The circuit court noted that although Yarnell's vehicle was located on private property at the time the shooting occurred, the evidence showed he was not trespassing because Remi had permitted him to come to the complex to drop off her belongings and it was undisputed Yarnell was lawfully occupying his vehicle. The circuit court thus concluded subsections "(B)(1) (Pennington had no right to be in [Yarnell's] vehicle) and (B)(3) ([Yarnell] was not using his vehicle for an unlawful purpose)" of the Act did not disqualify Yarnell from immunity. The circuit court further held that even if Yarnell were trespassing, his occupying the vehicle was not the proximate cause of the attack against him. The circuit court further rejected the State's argument that Yarnell brought the gun to harm Remi, finding that based on the evidence presented during the hearing, it could not conclude Yarnell had a premeditated motive to inflict serious bodily injury upon or to kill Remi. This appeal followed.

**ANALYSIS**

"A claim of immunity under the Act requires a pretrial determination using a preponderance of the evidence standard, which [appellate] court[s] review[] under an abuse of discretion standard of review." *State v. Gray*, 438 S.C. 130, 141, 882 S.E.2d 469, 475 (Ct. App. 2022) (alterations in original) (quoting *State v. Jones*, 416 S.C. 283, 290, 786 S.E.2d 132, 136 (2016)). "A circuit court abuses its discretion when its ruling is based on an error of law or, when grounded in factual conclusions, is without evidentiary support." *State v. Marshall*, 428 S.C. 11, 18, 832 S.E.2d 618, 621-22 (Ct. App. 2019).

"To obtain immunity under the Act, a defendant must establish by a preponderance

of the evidence that his use of deadly force was justified." *State v. Dennis*, 447 S.C. 323, 334, 926 S.E.2d 250, 256 (2026).  "There are four elements that must be established to justify the use of deadly force as self-defense." *State v. Scott*, 424 S.C. 463, 468, 819 S.E.2d 116, 118 (2018).  A claim of self-defense requires that (1) the defendant is "without fault in bringing on the difficulty"; (2) the defendant "actually believed he was in imminent danger of losing his life or sustaining serious bodily injury, or he actually was in such imminent danger"; (3) "if his defense is based upon his belief of imminent danger, a reasonably prudent man of ordinary firmness and courage would have entertained the same belief," and "[i]f the defendant actually was in imminent danger, the circumstances were such as would warrant a man of ordinary prudence, firmness[,] and courage to strike the fatal blow in order to save himself from serious bodily harm or losing his own life"; and (4) "the defendant had no other probable means of avoiding the danger of losing his own life or sustaining serious bodily injury than to act as he did in this particular instance." *State v. McCarty*, 437 S.C. 355, 369, 878 S.E.2d 902, 909-10 (2022) (quoting *State v. Curry*, 406 S.C. 364, 371 n.4, 752 S.E.2d 263, 266 n.4 (2013)).  "If the defendant has failed to meet the elements of reasonable fear or the duty to retreat, the court should then determine whether section 16-11-440(A) or (C) is applicable." *State v. Glenn*, 429 S.C. 108, 118, 838 S.E.2d 491, 496 (2019).

Subsections 16-11-440 of the Act provides,

> (A) A person is presumed to have a reasonable fear of imminent peril of death or great bodily injury to himself . . . when using deadly force that is intended or likely to cause death or great bodily injury to another person if the person:
>
> (1) against whom the deadly force is used is in the process of unlawfully and forcefully entering, or has unlawfully and forcibly entered . . . [an] occupied vehicle, or if he removes or is attempting to remove another person against his will from the . . . occupied vehicle; and
>
> (2) who uses deadly force knows or has reason to believe that an unlawful and forcible entry or unlawful and forcible act is occurring or has occurred.

(B) The presumption provided in subsection (A) does not apply if the person:

(1) against whom the deadly force is used has the right to be in . . . [the] occupied vehicle including, but not limited to, an owner, lessee, or titleholder; or

. . . .

(3) who uses deadly force is engaged in an unlawful activity or is using the . . . occupied vehicle to further an unlawful activity; . . . .

. . . .

(C) A person who is not engaged in an unlawful activity and who is attacked in another place where he has a right to be, including, but not limited to, his place of business, has no duty to retreat and has the right to stand his ground and meet force with force, including deadly force, if he reasonably believes it is necessary to prevent death or great bodily injury to himself . . . .

(D) A person who unlawfully and by force enters or attempts to enter a person's . . . occupied vehicle is presumed to be doing so with the intent to commit an unlawful act involving force or a violent crime . . . .

§ 16-11-440(A)-(D).

The State argues the circuit court abused its discretion by (1) finding Yarnell was without fault in bringing on the difficulty; (2) finding Yarnell was in actual danger of death or great bodily injury; (3) ruling that Yarnell was entitled to the presumption of reasonable fear because the decedent's fingerprints were found on Yarnell's car; and (4) finding subsection 16-11-440(B) of the Act did not apply when Yarnell was not engaged in an unlawful activity and was in a place he had the right to be under subsection 16-11-440(C).  We address each issue in turn.

**I.  Without Fault in Bringing on the Difficulty**

We hold the circuit court did not abuse its discretion in finding Yarnell was without fault in bringing on the difficulty.  *See Gray*, 438 S.C. at 141, 882 S.E.2d at 475 ("A claim of immunity under the Act requires a pretrial determination using a preponderance of the evidence standard, which [appellate] court[s] review[] under an abuse of discretion standard of review." (alterations in original) (quoting *Jones*, 416 S.C. at 290, 786 S.E.2d at 136)); *see also Marshall*, 428 S.C. at 18, 832 S.E.2d at 621-22 ("A circuit court abuses its discretion when its ruling is based on an error of law, or when grounded in factual conclusions, is without evidentiary support."); *McCarty*, 437 S.C. at 369, 878 S.E.2d at 909 (holding the first element of self-defense requires the defendant was "without fault in bringing on the difficulty" (quoting *Curry*, 406 S.C. at 371 n.4, 752 S.E.2d at 266 n.4)).  Yarnell testified his only reason for being at the apartment complex was to drop Remi's clothes off to her and that based on the conversation he had with her immediately prior to his arrival, he thought she wanted him to wait so that he could give them directly to her.  Thus, according to Yarnell, he had been invited to the parking lot and that permission had never been revoked.  Additionally, Yarnell explained that when he drove up to where Pennington, Card, and Cerio were standing in the parking lot, he simply asked them collectively if Remi was going to come get her things.  Yarnell stated that is when Pennington approached the car and started screaming at him to get out of the car so that he could "f*** [him] up."  The evidence conflicts as to whether Yarnell displayed his handgun before or after Pennington tried to open the car door.  Cerio's and Card's testimonies were inconsistent with Yarnell's account.  Cerio testified Pennington never tried to open the car door or punch Yarnell until *after* Yarnell presented a gun.  Although Card's testimony was less clear, he did state Pennington stepped back from the car when he saw that Yarnell had a gun and that is when Yarnell fired.  Nevertheless, the circuit court found Yarnell was a credible witness.  Because we cannot say the circuit court's finding that Yarnell was a credible witness lacked evidentiary support, we cannot disregard such finding.  *See State v. Johnson*, 413 S.C. 458, 467, 776 S.E.2d 367, 371 (2015) ("Credibility findings are treated as factual findings, and therefore, the appellate inquiry is limited to reviewing whether the trial court's factual findings are supported by any evidence in the record."); *State v. Oates*, 421 S.C. 1, 13, 803 S.E.2d 911, 918 (Ct. App. 2017) ("In other words, the abuse of discretion standard of review does not allow this court to reweigh the evidence or second-guess the [circuit] court's assessment of witness credibility." (alteration in original) (quoting *State v. Douglas*, 411 S.C. 307, 316, 768 S.E.2d 232, 237-38 (Ct. App. 2014))); *Johnson*, 413 S.C. at 467, 776 S.E.2d at 371 ("Moreover, . . . credibility determinations are entitled to great deference."); *see also State v. Blackwell*, 420 S.C. 127, 143 n.12, 801 S.E.2d 713, 721 n.12 (2017) (noting that "[a]lthough the dissent may disagree with the trial court's

pre-trial . . . determination, it cannot supplant the role of the trial court to judge the credibility of the witnesses, to weigh their testimony, and to evaluate conflicting testimony"). Furthermore, Remi was upstairs in the apartment when Yarnell returned, and no evidence showed he attempted to park or exit his car or that he expressly threatened any violence against Remi. Thus, we reject the State's argument that Yarnell brought on the difficulty by showing up when he was uninvited and that Pennington was acting for Remi's protection. Because the circuit court found Yarnell to be a credible witness and Yarnell's testimony provides evidence to support the circuit court's finding that he was without fault in bringing on the difficulty, we find the circuit court did not abuse its discretion in determining Yarnell established the first element of self-defense.

## II. Imminent Danger

We hold the circuit court did not abuse its discretion in finding Yarnell established he actually believed he was in imminent danger of losing his life or sustaining great bodily injury, or that he actually was in such imminent danger. *See McCarty*, 437 S.C. at 369, 878 S.E.2d at 909-10 (stating the second element of self-defense requires that the defendant "actually believed he was in imminent danger of losing his life or sustaining serious bodily injury or he actually was in such imminent danger" (quoting *Curry*, 406 S.C. at 371 n.4, 752 S.E.2d at 266 n.4)). Yarnell testified Pennington was trying to forcefully enter his vehicle and that he was afraid for his life when he shot at him. Yarnell stated Pennington punched him, tried to open his car door, and was using threatening language. Fingerprint analysis showed Pennington's palm print on the driver's side front door of Yarnell's car, but no forensic evidence showed his prints were on the actual door handle. However, Card, Cerio, and Yarnell all testified that Pennington tried to open the car door at some point during the confrontation. Testimony conflicted as to whether he tried to open the door before or after Yarnell pulled out his handgun, but according to Yarnell, he only pulled out the gun after Pennington tried to forcibly enter his vehicle. Yarnell stated Pennington then tried to reach for the gun and he was afraid Pennington would gain control of the gun and use it to injure or kill him. Yarnell admitted he did not see a gun or knife in Pennington's hands when he approached the vehicle but stated he could not see his hands and he did not know what he might have in his pants. However, because Yarnell testified he was afraid for his life when he shot Pennington and the circuit court found he was a credible witness, we hold evidence supports the circuit court's finding that Yarnell satisfied the second element of self-defense. *See Johnson*, 413 S.C. at 467, 776 S.E.2d at 371 ("Credibility findings are treated as factual findings, and therefore, the appellate inquiry is limited to reviewing whether the trial court's

factual findings are supported by any evidence in the record."); *id.* ("Moreover, . . . credibility determinations are entitled to great deference.").

## III. Application of Presumption in Subsection 16-11-440(A)

We hold the circuit court did not abuse its discretion in concluding that under subsection 16-11-440(A), Yarnell was entitled to a presumption of reasonable fear of imminent peril of death or great bodily injury when he used deadly force because Pennington was in the process of unlawfully and forcefully entering Yarnell's car and had attempted to remove Yarnell from the car. *See* § 16-11-440(A) ("A person is presumed to have a reasonable fear of imminent peril of death or great bodily injury to himself . . . when using deadly force that is intended or likely to cause death or great bodily injury to another person if the person: (1) against whom the deadly force is used *is in the process of unlawfully and forcefully entering*, or has unlawfully and forcibly entered . . . [an] *occupied vehicle*, or if he removes or is attempting to remove another person against his will from the . . . *occupied vehicle*; and (2) who uses deadly force knows or has reason to believe that an unlawful and forcible entry or unlawful and forcible act is occurring or has occurred." (emphases added)). "Section 16-11-440(A) may, under appropriate facts, replace the reasonable fear element of self-defense by providing a presumption that the person's fear was reasonable under certain circumstances . . . ." *Glenn*, 429 S.C. at 118, 838 S.E.2d at 496.

First, we hold subsection (A)(2) was satisfied because evidence showed Yarnell was in the driver's seat of his locked vehicle when Pennington attempted to open the driver's side door. Thus, Yarnell knew the forcible act or entry was occurring.

Second, we hold the circuit court did not err by finding Yarnell satisfied subsection (A)(1) because Yarnell presented evidence that he was sitting in the driver's seat of his own vehicle while Pennington was in the process of unlawfully and forcefully entering the vehicle or attempting to remove Yarnell from his car. The State does not dispute Yarnell was in his vehicle during the entire confrontation with Pennington, nor does the State contend Yarnell had no right to occupy his own vehicle. Yarnell testified Pennington approached his car and tried to forcefully open his car door and then punched him while he was sitting in his vehicle before he displayed his gun. He also testified Pennington told him several times to get out of the car so he could "f*** [him] up." Cannon's testimony was also consistent with this. The circuit court found "[Card] testified that after punching [Yarnell], Pennington took a step back and said[,] 'You have a gun[,]' and then a shot was fired." The circuit court found Cerio testified that "[w]hen Pennington let go of the

door handle, she heard the gun shot."  The circuit court noted that in her statement to police, Cerio indicated Yarnell started backing up, she told Pennington to let it go, and the car door opened and a shot was fired.  Thus, even though both Cerio and Card's testimonies indicated Pennington was not touching the car and was retreating when Yarnell shot him, Cerio's statement to police undermines that evidence.  Although Cerio and Card's testimonies conflict with Yarnell's account, they do not outright contradict his version of events.  Further, although the only evidence that Pennington was armed was Yarnell's testimony that "at some point" he "started wrapping something around his hand," subsection 16-11-440(A) contains no express requirement that the person attempting to enter or remove another person against his will from the occupied vehicle be armed.  Thus, Yarnell's testimony supports the circuit court's conclusion that Yarnell was entitled to the presumption of reasonable fear under subsection 16-11-440(A).  *See Johnson*, 413 S.C. at 467, 776 S.E.2d at 371 ("Credibility findings are treated as factual findings, and therefore, the appellate inquiry is limited to reviewing whether the trial court's factual findings are supported by any evidence in the record."); *id.* ("Moreover, . . . credibility determinations are entitled to great deference.").  Accordingly, we hold the circuit court did not abuse its discretion by determining Yarnell satisfied the reasonable fear requirement for establishing self-defense.

## IV.  Application of Subsections 16-11-440(B) and (C)

We hold evidence supports the circuit court's finding that Yarnell was not engaged in unlawful activity at the time of the shooting.  *See* § 16-11-440(B)(3) ("The presumption [of reasonable fear] provided in subsection (A) does not apply if the person: . . . who uses deadly force is engaged in an unlawful activity or is using the . . . occupied vehicle to further an unlawful activity . . . .").  We acknowledge Yarnell engaged in questionable behavior by his obsessive attempts to contact Remi and his demeaning text messages to her.  However, no evidence was presented that Yarnell expressly threatened Remi.  Yarnell's carrying of a loaded gun in his car when he showed up to the apartment complex after arguing with Remi most of the day could be viewed as demonstrating an intent to harm her, however, he provided an explanation for the gun and denied he intended to injure or kill Remi.  Further, the evidence is uncontroverted that Yarnell was occupying his own personal vehicle and that Pennington had no right to be in his vehicle.  Although the property manager testified the apartment complex parking lot was "private property," she acknowledged the sign did state "no trespassing " and that anyone could drive a vehicle through the parking lot.  She also confirmed that delivery vehicles were permitted in the parking lot for the purpose of delivering

packages to residents. The property manager further agreed that the complex did not have a gated entry and there were no fences surrounding the property. Moreover, Yarnell's testimony provided at least some evidence that he had been invited to the apartment complex to drop off Remi's belongings and that he had to wait for her to arrive before he could do so. According to his testimony, that was his reason for being there. *See Johnson*, 413 S.C. at 467, 776 S.E.2d at 371 ("Credibility findings are treated as factual findings, and therefore, the appellate inquiry is limited to reviewing whether the trial court's factual findings are supported by any evidence in the record."). Because the circuit court found Yarnell was credible, we hold evidence supports its conclusion that he was not engaged in unlawful activity at the time the confrontation began. Thus, we hold the circuit court did not abuse its discretion by finding subsection 16-11-440(B)(3) did not apply.

Finally, as to the State's argument that the circuit court erred by finding Yarnell was in a place he had the right to be under section 16-11-440(C), we need not address this issue. *See State v. Dunbar*, 356 S.C. 138, 142, 587 S.E.2d 691, 693-94 (2003) ("Issues not raised and ruled upon in the trial court will not be considered on appeal."). The circuit court discussed subsection 16-11-440(C) in a footnote in considering whether a proximate cause analysis was required under subsection 16-11-440(B), but it did not address whether Yarnell was entitled to immunity under subsection 16-11-440(C). Rather, in applying subsection 16-11-440(B), the court considered whether Yarnell was engaged in any unlawful activity by his presence at the complex. Thus, the question of whether Yarnell was in a place he had the right to be under subsection 16-11-440(C) is not before us.

**CONCLUSION**

For the foregoing reasons, the circuit court's order granting Yarnell's motion for immunity under the Act is

**AFFIRMED.**

**KONDUROS, MCDONALD, and VINSON, JJ., concur.**